Aetna Insurance Company *v.* Smith, McKinnon & Son.

[78 South, 289, Division A.]

1. Insurance. *Fire insurance. Assignment of policy. What constitutes.*

   The assignment of an insurance policy as collateral security for a debt, is not such an assignment as will invalidate the policy, and is not a violation of the terms of the insurance contract, which prohibits an assignment of the policy before loss without the consent of the insurance company.

2. Same.

   The stipulation in the policy, providing that it shall be void if assigned before loss without the consent of the company contemplates a general or complete unconditional assignment of the ownership of the policy, and is not intended to work a forfeiture of the rights of the insured, where the policy is assigned merely as collateral security for a debt, and its real ownership remains in the insured.

3. Evidence. *Parol evidence. Explaining writing. Admissibility.*

   Oral testimony, which does not contradict the written assignment of a fire insurance policy, is admissible to show the real purpose and character of the assignment.

4. Fire Insurance. *Additional insurance. Waiver.*

   Under a fire insurance policy which provided that the policy should be void if additional insurance should be procured on the property by insured, such provision was waived where the agent of the insurer knew of and wrote an additional policy upon the property for a number of years and the mere fact that the insured had such additional insurance canceled and took a policy for such additional insurance in a different company did not work a forfeiture of the main policy under such over insurance clause.

Appeal from the circuit court of Choctaw county. Hon. H. H. Rodgers, Judge.

Suit by Smith, McKinnon & Son against the Aetna Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*McLaurin & Arminstead,* for appellant.

I refer the court to the copy of my brief in the Palatine Insurance Company case as to a discussion of the third proposition mentioned in the additional briefs, requested.

As to the first proposition: "Was the assignment of the policy to Sanderson absolute or for the purpose of securing payment to him of the debt due him by appellee? We insist that this assignment was absolute. It speaks for itself and needs no explanation or aid of interpretation, and, unquestionably in a court of law under the practice in Mississippi it cannot be avoided by parol testimony nor can any conditions be added to this assignment by the interested testimony of the appellee in order to maintain this suit.

We think that this is made perfectly sure by section 717 of the Code of 1906. This section and the decisions thereunder settle the proposition that an assignor in writing of a chose in action cannot sue in his own name, but the suit must be brought, if at all, in the name of the assignee. This has been repeatedly held by our court and it would seem useless to cite authorities, but we refer the court to the case of *Beck* v. *Rosser,* 68 Miss. 72, and *Nickles* v. *Dillard,* 73 Miss. 803.

The supreme court of Mississippi has held that the person to whom a claim for damages for an injury to personal property has been assigned in writing, cannot sue thereon in his own name. *Chicago R. R. Co.* v. *Packwood,* 59 Miss. 280.

Even an equitable holder of a chose in action to whom a written assignment is not made cannot sue in his own name. *Lowenburg* v. *Jones,* 56 Miss. 688.

A bailor whose warehouse receipts are pledged cannot maintain replevin or trover either in his own name or for the use of the pledgee. *Selleck* v. *Compress Co.,* 72 Miss. 1019.

The assignee may sue in his own name if the assignment be in writing though another may possess a beneficial interest in the money due. *Jenkins* v. *Sherman,* 77 Miss. 884.

We insist therefore, that as the assignment in this case is in writing complete in itself, that no oral testimony can be received to qualify the assignment, and the assignment is absolute on its face. *Allen* v. *The Bank,* 72 Miss. 549; *Lumber Co.* v. *Lumber Co.,* 71 Miss. 944; *Chicago Bldg., etc., Co.* v. *Higginbotham,* 29 So. 79 (not officially reported); *Jordan* v. *Neal,* 33 So. 17 (not officially reported); *Columbia Star Milling Co.* v. *Russel Co.,* 89 Miss. *Cocke* v. *Blackbourn,* 58 Miss. 537; *Baum* v. *Lynn,* 72 Miss. 932.

Second proposition submitted by the court: "Does the assignment of a policy for the purpose only of securing the payment of a debt due the assignee come within the prohibition against assignment contained in the policy?"

If the assignment shows on its face that it was made as "collateral security" some of the courts hold that it does not, but this view is unsound, for it certainly affects the moral hazard. In the case of *Ins. Co.* v. *Boyce,* 114 Miss. 165, the court held that a mortgagee might pledge as "collateral security," the policy in which he had an independent contract, without violating the "mortgage clause" but on page 172 the distinction between ".delivery" money, and "written transfer" is clearly drawn.

The third proposition in reference to the waiver of additional insurance is answered by the copy of our brief attached hereto, as counsel for appellee already have a copy of this brief in the Palatine Insurance Company case sent them by us, we are sending only the copy of the brief written in response to propositions one and two in the court's suggestion.

. The court will observe that the copy of the brief was written in response to the suggestion of error

filed by counsel for appellee in the suit against the Palatine Insurance Company wherein the same claim of waiver in reference to additional insurance was set up.

*Dunn & Patterson* and *Vardaman & Vardaman,* for appellee.

There was never any delivery within the contemplation of the law. What is a delivery? "Before either party is bound, the proposition of one of them must be accepted by the other exactly as proposed. There must be a meeting of the minds on the same thing, and this is true of insurance as of other contracts."

*N. Y. Life Ins. Co.* v. *McIntosh,* 86 Miss. 236, and see the same authority cited in our original brief in this case. Would Sanders have had the right to keep this policy, when he had not complied with the term under which it had been sent to him, to wit, the taking of it to the insurance company and having the mortgagee clause or the notation made on it. The evidence is that it was given to him for this specific and only purpose, and to hold that it was delivered to the man when he had not complied with, nor had he attempted to comply, nor does he claim that he complied with the very purpose of the delivery to him, it seems to us, would abrogate and annull all the law that has been written on the subject of the delivery of instruments and what it takes to constitute a delivery.

As to the point made by counsel that there is an additional rule at law that prevents the appellee in this case from testifying to any facts qualifying the absolute assignment of the policy sued on, and that is under the rule often announced by this court that in a court at law in Mississippi a party may not be heard to testify to any facts qualifying or adding to a writing or in any manner varying the terms of a written contract except in cases of fraud, etc.

First, the testimony in this case went to the matter of the execution of the instrument and it is universally held without qualification, so far as we are advised, that the question of delivery and the execution of an instrument can always be inquired into; that is to say, the question of the validity of the instrument, or whether in fact it was a binding instrument and the rule of parole evidence, etc., has no bearing upon this case, and the rule as to the purpose for which an instrument was delivered being one of the essential parts of the document, to wit, delivery, can always be inquired into.

Does this assignment of a policy for the purpose only of securing the payment of a debt due the assignee come within the prohibition against assignments contained in the policy?

It is admitted by counsel for appellants that some of the courts' hold that assignments as collateral security does not come within the prohibition. He then proceeds to state that the view is unsound, but the courts of many jurisdictions hold that assignments as collateral security do not come within the prohibition in the policy.

This transaction between Prof. Sanderson and Smith, McKinnon & Co. had all the elements of a collateral undertaking. First, there was a debt due from Smith, McKinnon & Co. to Prof. Sanderson; second, there was a deed of trust to secure the debt; third, there is no testimony whatever of the extinguishment of any debt by the transfer of the policy; fourth, there is the specific statement of the two witnesses that it was sent to him as a collateral undertaking collateral to the main debt; fifth, there is the statement of the transaction that it was to be taken to the insurance company and the insertion by the insurance company of a clause payable in case of fire as the interest of the mortgagee might appear, which was never complied with on the part of Sanderson, and, therefore, the

undertaking never went into effect. There was no sale of the premises to Sanderson; Sanderson never had anything to do with the property, save that he had a mortgage on it. It had no element of an absolute assignment of the policy to Sanderson and McKinnon.

The first authorities in the counsel. for the appellant's brief, *Beck* v. *Rosser* and the list of cases following that, only decide in those specific cases on the question of how to bring the suit. The first *Beck* v. *Rosser,* 68 Miss. 72, being a case where one man sued for the use of another, and where the usee` did not appear in court at all; and where the other was shown to have absolutely transferred an open account. The court held in that case that a suit brought in the name of the original owner of the open account for the use of the man to whom it had been transferred, was not the proper way to bring the suit.

On the third proposition: Was the provision against additional insurance waived according to the testimony of appellee at the time the policy sued on was issued? McKinnon knew that the policy was already insured in another company for the sum of five hundred dollars. *Home Ins. Co.* v. *Gibson,* 72 Miss. 58; *Liverpool & C. Ins. Co.* v. *Farnsworth,* 72 Miss. 555; *Phoenix Ins. Company* v. *Randle,* 81 Miss. 720; *Miss. Home Ins. Co.* v. *Stevens,* 93 Miss. 439; *Georgia Home Ins. Co.* v. *Stein,* 72 Miss. 943; *Western Assur. Co.* v. *Phelps,* 77 Miss. 625; *So. Ins. Co.* v. *Stewart,* 30 So. 755, not officially reported; *Rivara* v. *Queen's Ins. Co.*, 62 Miss. 720.

On the question as to whether the provision prohibitory of assignments of the policy is applicable ·to collateral undertakings, we cite *Whiting* v. *Burkhardt,* (1901), 52 L. R. A. 788.

The distinction is plainly and fully pointed out in *Fogg* v. *Middlesex Mut. F. Ins. Co.,* 10 Cush. 337, 346; *Phillips* v. *Merrimack Mut. F. Ins. Co.,* 10 Cush.

350, 353; *Mutual Life Ins. Co.* v. *Allen,* 138 Mass. 24, 28, 29, 58 Am. Rep. 245; *Merrill* v. *Colonial Mut. F. Ins. Co.,* 169 Mass. 10, 13, 14, 47 N. E. 439; See, also, 2 Cooley's Briefs, 1068-1069; *Ellis* v. *Kreutzinger,* 27 Am. Dec. 270; *Allen* v. *Phoenix Assurance Company* (Idaho), 88 Dec. 245; 9 L. R. A. (N. S.) 93; 27 Mo. 211; 72 Am. Dec. 270; *True* v. *Manhattan F. Co.* (C. C.), 26 Fed. 83, 19 Cyc. L. & Pro. 637; *Griffey* v. *N. Y. Century Insurance Co.,* 100 N. Y. 417, 53 Am. Rep. 93; *Phoenix Insurance Company of Brooklyn* v. *Grom,* 215 Ill. 299, 74 N. E. 191, 25 L. R. A. (N. S.) I; *Sweedish American Insurance Co.* v. *Kuntson,* 76 Kansas 71, 100 Am. St. Rep. 382, 72 Pac. 526; *Page* v. *Brunstene,* 102 U. S. 664.

Delivery of the policy with knowledge of the existence of other insurance beyond the amount allowed thereon is a waiver of such conditions. *Putne* v. *Commonwealth Ins.,* 4 Fed. 753; *Haapa* v. *Metropolitan Life Insurance Co.,* 16 L. R. A. (N. S.) 1165. See pages 1213, et seq; *Anderson* v. *Marchester Fire Ins. Co.,* 59 Minn. 182, 28 L. R. A. 609; 50 Am. St. Rep. 400; 60 N. W. 1095. We submit that it would be impossible for a man to waive more effectually and completely that provision of the policy not by words but by acts. We submit most confidently that the case should be affirmed.

Holden, J., delivered the opinion of the court.

Smith, McKinnon & Son, appellees, recovered a judgment for one thousand five hundred dollars against the appellant, Ætna Insurance Co., on a policy of fire insurance issued March 27, 1914, covering a building which was destroyed by fire February 2, 1915. The insurance company appeals, and assigns several errors of the lower court upon which it asks for reversal; but we think only two contentions deserve notice, which are: That the appellant should have

been granted a peremptory instruction by the lower court, because, first, the policy of insurance sued on was void at the time of the fire on account of the insured having assigned the policy to J. A. Sanderson, a creditor of the insured, before loss occurred, without the consent of the company; and, second, because the insured procured five hundred dollars additional insurance on the property in violation of the terms of the policy.

The policy of insurance sued on was written in the regular form, and provided that the policy should be void if assigned before a loss, or if additional insurance in excess of the one thousand five hundred dollars be procured, without the consent of the company. On the back of the policy was the following indorsement:

"In case of fire, pay the amount of this policy to J. A. Sanderson, French Camp, Miss. [Signed] Smith, McKinnon & Son, May 5, 1914."

This assignment was executed about a month after the policy was issued and several months before the loss occurred. It appears, further, from this record, that the assignee, J. A. Sanderson, was a creditor of Smith, McKinnon & Son, and held a mortgage on the store building and lot upon which the building covered by the insurance stood. The policy was assigned to Sanderson by the insured as collateral security for the indebtedness due by insured appellees to Sanderson and covered by the said mortgage, and this assignment of the policy as collateral security was made and executed for the purpose of furnishing additional security to Sanderson for the said debt due by appellees, Smith, McKinnon & Son, to Sanderson. This policy, after assignment as collateral security, was delivered to Sanderson and held by him until after the fire occurred. February 2, 1915. After the fire Sanderson demanded payment on the policy, which was refused by the insurance company. The

policy was then returned to the appellees, who filed this suit and recovered judgment for one thousand five hundred dollars thereon.

The proof offered by the appellees in the lower court shows that at the time the policy of one thousand five hundred dollars here sued on was issued to the insured, appellees, by Mr. McWhorter, agent of the appellant insurance company, the appellees were carrying total concurrent insurance in the sum of two thousand dollars consisting of the one thousand five hundred dollar policy and a five hundred dollar policy on the property, all issued by the agent, McWhorter. The agent, McWhorter, knew that the additional insurance of five hundred dollars was being carried on this property; for he had himself, while agent of appellant, issued this total concurrent insurance in the two policies to the extent of two thousand dollars. When the policy for one thousand five hundred dollars now sued on was issued to the appellees, the additional insurance of five hundred dollars issued by McWhorter to appellees then existed and was in force. Afterwards, when this five hundred dollar policy expired, Mr. McWhorter renewed it and sent the new policy to the appellees, which they returned to him, stating to Agent McWhorter that they wished to take this five hundred dollar policy with another agent, for personal reasons, which they did. So the additional five hundred dollars insurance, now complained of by the appellant insurance company, was procured in another insurance agency, and the appellant contends that the procurement of this additional five hundred dollars insurance invalidated the policy sued on herein. The record further shows that the agent, McWhorter, had authority to act for the appellant, and had issued to the appellees total concurrent insurance in the amount of two thousand dollars on the same property in the same way for several years

prior to the time when the policy now in suit was issued.

As to the first contention made by appellant, that the assignment of the policy before loss occurred, without the consent of the company, invalidated the policy, we find, after an extensive and careful investigation of the authorities on that question, that the weight of authority and the better rule is that the assignment of an insurance policy as collateral security for a debt is not such an assignment as will invalidate the policy, and is not a violation of the terms of the insurance contract, which prohibits an assignment of the policy before loss without the consent of the insurance company. The stipulation in the policy, providing that it shall be void if assigned before loss without the consent of the company, contemplates a general or complete unconditional assignment of the ownership of the policy, and is not intended to work a forfeiture of the rights of the insured, where the policy is assigned merely as collateral security for a debt and its real ownership remains in the insured. Therefore the assignment in this case did not invalidate the policy. The proof in the record shows that the insured had never ceased to be the real owners of the policy, and that the only interest of the assignee was merely such an interest as the holder of collateral security acquires in the thing given as a security—a mere equity. The legal title and ownership of the policy still remained in the insured. Consequently, when a strict and proper construction is placed upon the terms and stipulations of the policy, as should be done in favor of the insured and against the insurer, where forfeiture is claimed, it becomes plain, and reasonably follows, that the assignment in this case did not constitute an assignment in violation of the stipulation contained in the policy. *Griffey* v. *New York Central Ins. Co.,* 100 N. Y. 417, 3 N. E. 309, 53 Am. Rep. 202; *Ellis* v. *Kreutzinger,* 27 Mo.

311, 72 Am. Dec. 270; *Insurance Co.* v. *Kelly*, 32 Md. 421, 3 Am. Rep. 149; *Key* v. *Continental Ins. Co.*, 101 Mo. App. 344, 74 S. W. 162; *Mahr* v. *Norwich F. Ins. Soc.*, 7 N. Y. Supp. 143; *Dickey* v. *Pocomoke City Nat. Bank*, 89 Md. 282, 43 Atl. 33; *True* v. *Manhattan F. Ins. Co.* (C. C.), 26 Fed. 83; *Allen* v. *Phoenix Assurance Co.*, 12 Idaho, 653, 88 Pac. 245, 8 L. R. A. (N. S.) 903, 10 Ann. Cas. 328; 2 May, Ins., section 379; Cooley's Briefs on Insurance, vol. 2, p. 1865.

But it is further contended that the assignment must be viewed and construed solely as it is written, and that oral testimony showing that it was an assignment merely as collateral security for a debt was not admissible. We cannot agree with counsel for appellant in this contention, for the reason that the authorities seem to be uniform that oral testimony, which does not contradict the written assignment, is admissible to show the real purpose and character of the assignment. 17 Cyc. 722; 10 R. C. L., sections 231, 234; Elliott on Contracts, section 1641.

Now, coming to the second contention of appellant, that the policy was void because five hundred dollars additional insurance was procured without the consent of the insurance company: On that proposition it will be observed that the proof in the record shows that the appellees had been carrying two thousand dollars total concurrent insurance on the building here in question, through Agent McWhorter, for five or six years previous to the time when the policy sued on was issued. At the time the one thousand five hundred dollar policy sued on was issued by the agent, McWhorter, he had also issued to the appellees the said five hundred dollars additional insurance complained of. In other words, to state the matter plainly, the appellant's agent, McWhorter, issued the policy of one thousand five hundred dollars here sued on at a time when he knew that the additional five hundred dollar policy was then in existence. In fact, he had issued

the policies for five hundred dollars and one thousand five hundred dollars, respectively, and of course knew that the total concurrent insurance of two thousand dollars was being carried on the building by the insured, appellees, in violation of the limit of one thousand five hundred dollars stipulated in the policy sued on in this case.

Agent McWhorter had been knowingly violating the stipulation of the policy in reference to additional or excessive insurance for several years, and when he issued the one thousand five hundred dollar policy he knew that he was also carrying the additional five hundred dollars insurance, and by his action he impliedly, if not expressly, agreed to the overinsurance in violation of the stipulation in the one thousand five hundred dollar policy, which amounted to consent or waiver of the clause of the policy which prohibited the procurement of additional insurance in excess of the one thousand five hundred dollar policy sued on herein. We think this question was definitely settled by this court in the case of *New Orleans Insurance Ass'n* v. *Holberg & Klaus,* 64 Miss. 51, 8 So. 175. In that case the court held, in substance, that the cancellation of one policy and the taking out of another for the same amount did not increase the risk and did not in any manner violate the terms of the policy. And that is true in the case before us, because of the waiver by the agent. The difference between that case and the one here is that the consent or waiver was in writing there and here it was by the acts and knowledge of the agent of the insurance company. But in effect it is immaterial as to how the consent or waiver is brought about. The instant case is equally as conclusive against the insurance company as the *Holberg Case, supra,* for the reasons mentioned.

Therefore, when we test the question out we find that the one thousand five hundred dollar policy here sued on was valid when issued, and the insured did

nothing to invalidate it, except that which the appellant's agent, McWhorter, had already permitted, and had been consenting to for several years prior to that time; that is, allowing, and issuing himself, concurrent additional insurance for five hundred in excess of the one thousand five hundred dollar policy sued on in this case. It could make no difference whether or not McWhorter himself issued the additional insurance of five hundred dollars complained of here. So we are clearly of opinion that the excessive additional insurance of five hundred dollars in this case did not invalidate the policy, because the appellant, through its agent, agreed to it by his previous acts, and thus waived the violation of the provision against the additional overinsurance.

Able counsel for appellant take the further position that this case is controlled by the decision of this court in *Palatine Ins. Co.* v. *Smith, McKinnon & Son,* 115 Miss. 324, 75 So. 564, and that the judgment of the lower court should be reversed, if we follow that decision. We shall not discuss the difference between that case and the one now before us, because the difference may be easily seen by a careful reading of the two cases, and we think it unnecessary to point it out. However, we may say that the principal distinction between the Palatine Case and the case before us is that in the Palatine Case there was no known excessive additional insurance in existence at the time the policy sued on was issued, but subsequently additional overinsurance, in violation of the stipulation of the policy, was issued to the insured, by another agent, and without the knowledge or consent of the defendant insurance company. Here the insurance company, through its agent, McWhorter, issued the policy for one thousand five hundred dollars sued on, at a time when he knew the additional overinsurance of five hundred dollars was then in force and effect, which he had himself issued at

that time and for several years prior thereto. When the one thousand five hundred dollar policy was issued, it was certainly a valid policy because the agent of appellant had issued the five hundred dollars excessive insurance, and knew it was in force at the very time the one thousand five hundred dollar policy was issued, and thus consented to total concurrent insurance of two thousand dollars on the property. A clear differentiation in other respects between the two cases may be pointed out, but we think the distinction indicated above is sufficient.

The conclusions reached by us above are sustained by the following authorities: *Haapa* v. *Metropolitan L. Ins. Co.,* 150 Mich. 467, 114 N. W. 380, 16 L. R. A. (N. S.) 1165, and note, 121 Am. St. Rep. 627; *Anderson* v. *Manchester F. Ins. Co.,* 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. Rep. 400; *Putnam* v. *Commonwealth Ins. Co.* (C. C.), 4 Fed. 753; *Phoenix Ins. Co.* v. *Grove,* 215 Ill. 299, 74 N. E. 141, 25 L. R. A. (N. S.) 1, and note; *Rivara* v. *Queen's Ins. Co.,* 62 Miss. 720; *Western Assurrance Co.* v. *Phelps,* 77 Miss. 625, 27 So. 745; *Georgia Home Ins. Co.* v. *Stein,* 72 Miss. 943, 18 So. 414; *Miss. Home Ins. Co.* v. *Stevens,* 93 Miss. 439, 46 So. 245; *Phoenix Ins. Co.* v. *Randle,* 81 Miss. 720, 33 So. 500.

The judgment of the lower court is affirmed.

*Affirmed.*