INTER-SOUTHERN LIFE INS. CO. *et al. v.* HUMPHREY.

[84 South. 625, In Banc. No. 21068.]

1. ASSIGNMENTS. *Assignment of debt to secure note is assignment as collateral.*

   A debt due for commissions under an agency contract when assigned to secure the payment of a note is an assignment as collateral security, and not a general, unconditional assignment of the debt.

2. ASSIGNMENTS. *Provision against assignment without debtor's authority does not prevent assignment as collateral.*

   The assignment of a debt as collateral security does not violate the stipulation in the contract against assignment, unless authorized by the debtor, because the prohibition against assignment merely contemplates a general, unconditional assignment, and not one as collateral security.

APPEAL from the chancery court of Leflore county.
HON. W. F. GEE, chancellor.

Suit by W. R. Humphrey, executor, against the inter-Southern Life Insurance Company and others, for discovery and an accounting. Demurrer to bill overruled, and defendants appeal. Affirmed, and cause remanded, with leave to plead further.

*Whittington & Osborne,* for appellant.

The only question raised by the demurrer and now before this court for decision is whether or not the provision in the two contracts between Forrester and Log-

gins and the insurance company prohibiting the assignment of commissions accruing under the contracts to Forrester and Loggins is valid and binding. The court will observe that not only did Forrester and Loggins assign to Mrs. Humphrey all claim and interest which they had to commissions accrued or thereafter accruing under their said contracts, but went so far as to authorize the said Mrs. Humphrey or her legal representative to collect said Commissions from the insurance companies, and also consented and agreed that all such commissions should be paid to the said Mrs. Humphrey.

Under the common law a chose in action or a claim or right to money to become due on a contingency was not assignable. 5 C. J. 846, 2 R. C. L. 595 and 596. Various statutes have been adopted by the different states making choses in action and all rights to property assignable. The usual test applied is whether or not the claim or right of action would survive to the personal representative of the assignor.

In any event, there is no question but what Forrester and Loggins would have had the perfect right to assign to Mrs. Humphrey the commissions earned or to be earned by them under said contracts, had it not been for the provision in the contract expressly prohibiting the same; and on the other hand, there can be no question but that such provision prohibiting the assignment of the premiums accruing under the contracts is perfectly legal and binding on the parties to the contracts, as well as all others claiming thereunder.

"The parties to a contract otherwise not assignable may render it assignable by incorporating a provision that it shall bind their assigns; or they may in terms prohibit its assignment, so that neither personal representative nor assignees can succeed to any rights in virtue of it, or be bound by its obligations, and an attempted transfer in such a case creates a simple per-

sonal obligation which can be enforced only against the assignor." 5 C. J. 875; *Burck* v. *Taylor,* 152 U. S. 634, 38 L. E. 578.

Indeed, there is no dissent as to this proposition. *Arkansas Valley Smelting Company* v. *Bedden Mining Co.,* 127 U. S. 379, 32 L. E. 246; *Omaha* v. *Standard Oil Company,* 55 Neb. 337, 75 N. W. 859; *Zetterlund* v. *Texas Land & Cattle Co.,* 55 Neb. 355, 75 N. W. 860; *Tibler* v. *Sheffield Land, Iron & Coal Co.,* 79 Ala. 377, 58 Am. Rep. 593; *Barringer* v. *Bes. Construction Co.,* 23 Okla. 131, 21 L. R. A. (N. S.) 597; *LaRue* v. *Groezinger,* 84 Cal. 281, 18 Am. St. Rep. 179; *Mueller* v. *Northwestern University,* 195 Ills. 236, 63 N. E. 110, 88 Am. St. Rep. 194; *Delaward County* v. *Diebold Safe, etc., Co.,* 133 U. S. 473, 33 L. Ed. 674; *Devlin* v. *Mayer,* 63 N. Y. 8, 50 How. Pr. 1-9.

As explained in the case of *City of Omaha* v. *Standard Oil Company, supra,* the reason and purpose of these covenants preventing assignments of contracts or of the avails thereof is that the assignor may not be troubled in determining at his peril which of contesting claimants are entitled to the fund, and then another object in view is to prevent the party making such an agreement from losing interest in the performance of the contract by divesting himself of all beneficial interest thereunder.

It has always been and still is the rule that regardless of the statutes to the contrary, a purely personal contract or a contract involving the personal equasion or the performance of a contract by a party to the exclusion of all others, is not assignable.

We direct the court's attention to this fact, that in each and every case where the courts have held that an assignment of a lease contract as collateral security was not in violation of the provision against assignment, the decision has rested upon the fact that the actual transfer or vesting of the title in the assignee was not voluntary on

the part of the assignor; that the provision against assignment meant that the party making the agreement not to assign, should not assign voluntarily and in every instance the actual transfer and assignment has been by operation of law, or by decree of the court, or by sale of the lease, or an interest in land under an execution, or by bankruptcy of the party, in which last-mentioned case the assignment is made by virtue of the bankruptcy statute and not by any wilful act of the assignor.

In support of his contention, counsel in his argument before the chancellor cited 4 Cyc., 75, and the three cases cited in support of the statement laid down in Cyc. (which is also laid down in Corpus Juris. and the same three cases cited). These three cases are: *Butler* v. *Rockwell,* 14 Colo. 125, 23 Pac. 462; *Norton* v. *Whitehead,* 84 Cal. 263, 24 Pac. 154, 18 A. S. R. 172; *Crouse* v. *Mitchell,* 130 Mich. 347, 90 N. W. 32, 97 A. S. R. 479. The statement in Cyc. above referred to is as follows: "Stipulations against assignments are not intended to prevent assignfents as collateral, but parties may expressly or impliedly stipulate that an assignment shall make the contract void, and an assignment in violation of such stipulation would not vest any rights in the assignee."

We are not at war with this statement because as hereinabove indicated, we agree that the party to a contract cannot declare same breached or forfeited merely because the other party to the contract puts up his contract as collateral security, even though the contract contains a stipulation against assignment, but this proposition we undertake to say only applies to controversies arising between the original parties to the contract, by assignment from a party to the contract which does not prejudice in any way the rights and privileges of the other party to the contract. It has long been held that a provision against assignment of a contract or the avails thereof is solely for the benefit and protection of the

party to the contract who required the insertion of such provision in the contract.

This principle is recognized and followed in the case of *Eqell* v. *American Surety Co.*, 80 Miss. 782. Another good example of this principle is *Fortunate* v. *Patton*, 147 N. Y. 277, 41 N. E. 572. The same principle is recognized in *Hobbs* v. *McLean*, 117 U. S. 567, 29 L. E. 940. But, returning to the three cases hereinbefore mentioned and relied upon by counsel. First, *Butler* v. *Rockwell*, *supra.*

In that case in a contract of sale between vendor and purchaser, there was a stipulation that the money should be paid to the vendor and the vendor only. The vendor assigned his contract as collateral security. The vendee sought to prevent payment because of the assignment, and the court held that the provision was for the purpose of allowing the vendee to set up any equity he might have against the vendor at the time of the closing of the transaction, that is, the actual purchase of the land, and inasmuch as there were no equities set up, he could not complain. This is but another case, if the court please, where a forfeiture of the contract itself was sought as between parties because of the assignment of the contract as collateral security, and we repeat again that it would be idle and useless for the Life Insurance Company in the case at bar, had this suit been brought by Forrester and Loggins against it to enforce payment of premiums due them under their contracts, to seek to prevent payment by setting up this assignment to Mrs. Humphrey, at the same time admitting that it had paid Mrs. Humphrey nothing whatever on account of the assignment.

*Norton* v. *Whitehead, supra,* does not in any way support counsel in his contention. The contract was one for work on the harbor in the city of San Francisco, and made by a man by the name of Finley with the Harbor Commissioners. The contract did provide that it should

not be assigned without the written consent of the board. The syllabus of the case is somewhat misleading because as we read the case, and we have read it several times carefully, the question of the illegal assignment of the contract was not involved. The commissioners were perfectly willing to pay the money either to the assignee or to anyone else whom the court might direct. Finley died before the consummation of the contract and although his assignee had actually completed the contract and there was really a novation, the Harbor Commissioners were not willing to pay the money to the assignee because of the peculiar wording of the assignment under which the assignee claimed, until after the court had construed same. The question is, was there an actual assignment? This will be clearly seen from the language used by the court on pages 176 and 177 of the case as reported in the 18 Am. St. Rep.

Another question involved was whether or not the death of Finley worked a revocation by operation of law, of the assignment. Nothing whatever is said in the opinion of the court as to any contention made by the harbor commissioners that they were not liable because the contract had been assigned in violation of the stipulation against assignment contained in the contract. As a matter of fact, the commissioners would have been estopped to make such a contention under the facts set out in the opinion of the court, because the assignee actually performed the work with the knowledge and acquiescence of the commissioners, and as observed by the court, the work was satisfactory and accepted by the commissioners.

It is a coincidence, to say the least that the next case reported in the 18th American State Report after the case of *Norton* v *Whitehead,* is the case of *LaRue* v. *Groezinger,* 84 Cal., cited by the same court at the same term. This last mentioned case is one of the leading cases on the proposition that parties to a contract may stipulate

against its assignment even though there be a statutory provision making all choses in action and rights in property assignable.

But counsel put his main reliance on *Crouse* v. *Mitchell, supra.* We think this case is without difficulty when considered in the light of the facts, as stated in the opinion of the court. In this case a man by the name of Parker leased a building to a man by the name of Michell for a term of fifteen years. The lease contained a provision that the lessee would not assign, or transfer the lease or sublet said premises, or any part thereof, without the written consent of the lessor. There is some question of an estoppel on the part of the lessor, because with his knowledge and acquiescence the lessee sublet part of the premises to certain corporations in which the lessee held stock, but the decision did not turn upon that point. The lessee assigned the lease as collateral security to Crouse & Brandegee for a debt due that concern. Some time afterwards, the lessee also assigned the same lease to Ives & Sons, his bankers, as collateral security for a debt due said bankers. The landlord consented to the assignment of Ives & Son but refused his assent to the assignment of Crouse & Brandegee. Suit was filed by Crouse & Brandegee, asking the court to sell said lease under said assignment in satisfaction of the indebtedness for which the assignment was made. Parker, the landlord, had died in the meantime, and the opinion does not clearly show whether or not his personal representatives objected to the sale by the court, but we will assume for the sake of argument they did. The court simply held that the provision in the lease prohibiting an assignment would not prevent the court from ordering the lease sold under the assignment as collateral security for the simple reason that a sale by the court would not be a voluntary assignment or vesting of the title in the lessee of the lease in the purchaser at the sale. That the landlord could not complain of the assignment by the lessee of

the lease as collateral security because it was not a sur-
render of the lease or of the leased premises; that the
provision against assignment was to prohibit the lessee
from voluntarily assigning the contract in such a manner
as to vest the assignee with the title to the lease and the
possession of the premises; that a sale by the court would
be one *in invitum*. The court held that the assignment as
collateral security was merely a pledge or mortgage of
the lease; was made in good faith and was not in viola-
tion of the stipulation against assignment  The court
relied upon *Riggs* v. *Purcell*, 66 N. Y. 199.

We said at the outset that where the actual transfer of
the lease or of the contract was made by a decree of the
court enforcing a mortgage, or other equitable lien, that
the provision against assignment was not violated be-
cause not made with the consent or approval of the lessee
or of the party to the contract who agreed not to assign
or dispose of the property. This whole question is dis-
cussed in an exhaustive note to the case of *Glazey* v.
*Williams*, 77 C. C. A. 662, as reported in 14 L. R. A. (N.
S.) 1199; *State of Washington, etc.* v. *Sunset Telephone
Co.*, L. R. A. (N. S.) 1917F, 1178.

By no possible logical argument can it be made to ap-
pear that this is a proceeding to have the court to sell
the rights of Forrester and Loggins under this contract,
the provisions of which prohibited the assignment of the
very thing sued for. No mortgage was given, but a trans-
fer and assignment of the money was actually made and
the title then vested in the assignee. She demanded and
was given the right to collect the money due the assignors
under the contracts—indeed, the suit is on the contracts
themselves. The bill proceeds on the theory that ap-
pellee is the owner of the monies accrued on the contract
at and after the execution of the assignment.

We undertake to say that counsel cannot produce a
case in which the court has sustained the assignee on
a contract for the payment of money in which there was

a provision prohibiting an assignment where the suit is based on the contract itself and the assignee seeks to recover as though he stood in the shoes of the assignor. As pointed out by our court in the case of *Surety Company* v. *United States,* 79 Miss. 289, and, in *Fewell* v. *Surety Company,* 80 Miss. 792, it is quite a different case where the assignee seeks to recover against the party to the original contract for whose benefit the stipulation against assignment was made.

We have searched diligently and have not found a case where the courts have upheld an assignment whether made for collateral security or otherwise in violation of the provision of the contract, where the suit was by the assignee himself against the party to the original contract for whose benefit the provision was made.

*Gwin, Mayes & Green,* for appellee.

This case is here on demurrer, and the correctness of the decree sustaining the demurrer can and will be determined solely with reference to the allegations of the bill.

The trouble with the position of the appellants is, the whole argument made in their brief is not only unsound in itself, it proceeds throughout upon an assumption of fact which is obviously false and which renders the entire argument inappropriate. To point this out will not only answer the brief conclusively, but will at the same time conclusively establish the correctness of the decree sustaining the demurrer as against any argument that might be made.

The position taken by the appellants, and which their brief purports to sustain, is that although the assignment to Mrs. Humphrey was merely by way of collateral security, and although this assignment was otherwise valid, it cannot be enforced against them in view of the provision of the agency contracts with Forrester and Loggins, without their (appellants') consent,

This manifestly assumes that as a matter of fact the appellant insurance companies did not assent to the assignment. For if they did assent to it that would end the whole matter. The requirement of the provision in the agency contracts prohibiting an assignment would be satisfied and the appellants would be estopped. Certainly no authority is necessary to establish so manifest a proposition. (Note, 88 Am. St. Rep. 205.) There is not one word in the whole bill which alleges directly or indirectly, that the appellants refused to assent to the assignment.

The allegation of the bill that the appellants have "failed and refused" to pay the money to Mrs. Humphrey is in nowise equivalent to an allegation that the appellants refused to assent to the assignment. In the absence of an express allegation in the bill on the point, one way or another, this court will not assume that the appellants in fact refuse to assent to the assignment. On the contrary it will assume, until the reverse is alleged and established, that the assignment was assented to. All of the authorities agree that where it appears that the debtor was promptly notified of the assignment it will be presumed that he assented to it, in the absence of allegation and proof to the contrary. 3 Paige on Contracts, p. 1943, sec. 1263; *Turner* v. *Wells,* 64 N. J. L. 269, 45 Atl. 641; *Burnett* v. *Jersey City,* 31 N. J. Eq. 341; *Staples* v. *Somerville,* 176 Mass. 237, 57 N. E. 386.

It is manifest, therefore, that on the record in this case, as we have stated, there is nothing for this court to do but to affirm the decree below, in any event.

Holden, J., delivered the opinion of the court.

This is a suit by bill in chancery for discovery and accounting of certain sums of money alleged to be due by appellant Life Insurance Company to the appellee Humphrey. A demurrer to the bill having been over-

ruled, this appeal is taken to settle the principles of the case.

The appellant Life Insurance Company entered into a written contract with Forrester and Loggins by the terms of which the Life Insurance Company appointed the said Forrester and Loggins as its agents and agreed to pay them a certain per cent. on all new business written, as well as seven and one-half per cent. commission on all renewal premiums on old policies for a certain number of years. The eleventh clause of this contract provides as follows:

"No assignment of commissions accruing hereunder shall be valid unless authorized in writing by the company in advance."

Subsequently the Life Insurance Company became largely indebted to the said Forrester and Loggins for the said commissions earned and accruing on renewal premiums under the contract, and it appears that in the course of time the insurance company would become still further indebted to its said agents for accruing commissions.

The said Forrester and Loggins became indebted to the appellee, Humphrey, in the sum of nine thousand, five hundred dollars as evidenced by their promissory note, and in order to secure the payment of this note they assigned to Humphrey, as collateral security, certain notes and accounts, and all their claims and demands against the insurance company on account of renewal commissions accrued and thereafter to accrue under the contract between said Forrester and Loggins and the insurance company, and all commissions accrued or accruing thereafter under or on account of said contract were to be paid to appellee, Humphrey. The assignment further provides:

"In event we should fail to pay the aforesaid note at the end of sixty days on demand the said Mrs. Sallie J. Humphrey, or her legal representative (who is the

appellee executor here) in person or by agent, shall have
the right to sell all of the notes, accounts, claims, de-
mands and property herein assigned and transferred to
her, or any part thereof, at public auction at any time af-
ter five (5) days' notice in writing of the time and place
of such sale mailed to each of us addressed to Green-
wood, Mississippi, and apply the proceeds of such sale to
the payment of said note.''

The bill in substance sets up the facts stated above,
alleges that the note is past due and unpaid, and asks
that the insurance company be required to discover
the full amount of commissions due by it to said For-
rester and Loggins, and that an accounting be had to ap-
pellee of the amount of said commissions, and prays for
general relief.

The principal ground of the demurrer is that the
allegations of the bill, which sets out the contract be-
tween Forrester and Loggins, including the provision
that ''no assignment of commissions accruing hereun-
der shall be valid unless authorized in writing by the
company in advance,'' preclude a recovery by the as-
signee because the assignment was not authorized, and
therefore was invalid.

The decisive point in the case therefore is whether
or not the proceeds growing out of the contract between
Forrester and Loggins and the insurance company may
be validly assigned as collateral security when the con-
tract between the debtor and the assignor expressly
prohibits such assignment.

We think undoubtedly the assignment here was as col-
lateral security. The assignee took no rights under the
assignment other than to collect the renewal commissions
and hold the same as collateral to secure the payment
of the note. The assignment expressly provides the
manner of disposition of the collateral and the applica-
tion of the proceeds to the payment of the note. The
assignee did not become the real and unconditional own-

er, both legal and equitable, of the renewal commissions due under the agency contract. Forrester and Loggins had not disposed of their entire interest in the commissions by the assignment, but merely pledged the commissions as collateral security for the payment of the note; they retaining the legal ownership. When a sufficient amount of the commissions would have accrued and been applied to the payment of the note in full, then Forrester and Loggins, who were the legal owners at all times, would again resume drawing the balance of the commissions forthcoming for a number of years.

In our investigation of the question we find that the parties may in terms prohibit the assignment of any contract, and that such prohibition is valid and binding, but whether such assignment as collateral security, as contradistinguished from a complete, unconditional assignment of the full title, is invalid is an inquiry of considerable difficulty in the particular character of contract before us.

This court in *Ætna Insurance Co.* v. *Smith*, 117 Miss. 327, 78 So. 289, L. R. A. 1918D, 1158, has settled the principle in this state that a stipulation in an insurance policy, providing that it shall be void if assigned without the consent of the company, contemplates a general or complete unconditional assignment of the ownership of the policy, and is not void where the policy is assigned merely as collateral security for a debt and the real ownership remains in the insured. Of course the rule was applied there to an insurance policy, and it may be reasonably said that there is a difference in the two kinds of contract, but we think the same principle is involved in the contract here as in the insurance contract; and therefore we are constrained to hold that the stipulation against assignment in the case before us contemplated only a complete unconditional assignment of the ownership of the commissions, and did not contemplate and intend an assignment as collateral se-

curity. Consequently we have reached the conclusion that the assignment in this case was valid. 5 C. J. 952.

We have carefully perused the cases cited by counsel in support of their respective contentions, but have gained no real satisfaction from any of them. Some of the cases deal with the question of assignment of the nonassignable contract and the proceeds thereunder, and others involve the assignment of the proceeds alone as between different assignees, while many of the decisions involve the rights of municipal debtors to assignees where the assignment seems to have been a complete unconditional transfer of the proceeds of the contract, and not an assignment or pledge as collateral to secure the payment of a debt. But nowhere have we been able to find a case which expressly holds that the provision against assignment contemplated and intended to prohibit the assignment of the debt or chose in action as collateral security. On the contrary, we find the textbook rule to be that stipulations against assignments are not intended to prevent assignment as collateral. This seems to be an announcement of the general rule, which we have found applied in many cases involving land contracts, insurance policies, etc., and we see no reason against the application of the same principle in the case at bar. *Butler* v. *Gage*, 14 Colo. 125, 23 Pac. 462.

Prohibition in a contract against assignment is legal and valid. The right to make a personal contract or to agree for the performance of a contract by a certain party to the exclusion of all others is obviously legitimate. Such contracts are often made with a view of retaining the personal interest and action of the payee, which purpose might be defeated should the contract or the fruits of it be unconditionally assigned to some stranger. But where the assignment of the proceeds in a nonassignable contract is made merely as collateral security for the payment of a debt, and the real owner-

ship remains in the assignor, he still retains the personal interest and obligation of performance as the real owner, and the reason urged against the validity of such assignment disappears, and the rights of the debtor are not prejudiced by the collateral assignment which inures to the benefit of the assignor.

Restrictions against assignment of contracts are not looked upon by the courts with full favor, because they prohibit the alienation of such property rights, thus depriving the owner of the full enjoyment and control thereof; especially is this true when such deprivation results in no benefit to the debtor.

It is held by good authority that the prohibition against assignment in a contract intends that the owner of the property right cannot voluntarily assign it, but that when the right passes to another by court sale or foreclosure against the right assigned as collateral security, it is valid, because the transfer of full title in such case is involuntary on the part of the owner in the contract. *Crouse* v. *Michell,* 130 Mich. 347, 90 N. W. 32, 79 Am. St. Rep. 479.

However, we rest the decision in this case upon the ground that there is a clear distinction between an unconditional assignment and a collateral assignment, and that the prohibition in the contract against assignment does not contemplate a collateral assignment, but means that only a complete assignment by the owner of his whole interest in the property right shall be invalid.

The decree of the lower court is affirmed, the cause remanded, and sixty days granted appellant in which to further plead.

*Affirmed and remanded.*