# Insley v. State Mutual Life Assurance Company

*Benjamin H. Levintow*, for plaintiff.
*Owen B. Rhoads*, for defendant.

PARRY, J., June 16, 1938.—Plaintiff's motions for new trial and judgment n. o. v. after a finding for the defendant entered by the trial judge after hearing the case without a jury.

Under a written contract dated May 1, 1923, the plaintiff Maurice H. Insley, in partnership with one J. Elerick Willing, was employed as a general agent by the defendant, The State Mutual Life Assurance Company of Worcester, Massachusetts, and became entitled to commissions on the initial premiums on policies he wrote and on the renewal premiums for a period of 14 years. In September, 1924 Willing and Insley resigned and subsequently Willing alone entered into a general agency contract with the defendant company. On September 5,

1924 as such general agent he employed Insley as a soliciting agent under a written form of contract supplied by and bearing the name of the defendant but not executed by it, in which it was provided that commissions would "be allowed" to the soliciting agent on initial premiums and on renewal premiums for nine years, subject to a reduction of one percent in case the agency terminated. As a matter of fact the company itself always paid the commissions to Insley and it seems clear from the writing and other evidence submitted that through its general agent it is a party to the contract and liable for the commissions to the soliciting agent therein stipulated. Indeed no serious contention to the contrary is made.

On December 16, 1926 the second contract was replaced by a third which differed from it only with respect to the rate of the renewal commissions.

The General Agent's contract contained these provisions:—

"Sec. XIX. That no assignment, sale or transfer of this agreement or of any of the rights, claims or interest of the general agents, or either of them, under it shall be made by the said general agents, or either of them, without the written assent of the said Company, and any such alleged assignment, sale or transfer by them, or either of them, without such written assent of the Company shall immediately make this contract void and be a release in full to the said Company of any and all its obligations under same."

"Sec. XXIII. That in case the said General Agents, or either of them, fail to comply with any of the conditions, duties or obligations of this agreement, * * * * * then and in such case, this contract shall at once become terminated without notice and all commissions and claims whatsoever accruing hereunder to the said General Agents shall become forfeited and void."

Sections IX and XIII of the sub-agent's contract contained similar provisions substituting the word agent for "general agents".

In 1927 after Insley became a sub-agent, he, with the consent and approval of the Company in writing made an assignment of his right to commissions under the first contract to Willing in order to secure a loan.

In 1928 and 1929 both Willing and Insley, without the knowledge or consent of the Company, assigned their rights to commissions under existing contracts to one Harry T. Stoddart as collateral for loans. Stoddart thereupon issued bonds in the amount of the loans bearing the name of the Insurance Company in bold-faced type, which he sold to third persons. When this came to the knowledge of the Insurance Company in March, 1930 it promptly discharged Willing and stopped paying renewal commissions to Insley who had previously resigned. It then paid these commissions to Stoddart in order to retire the bonds. After discharging Insley's debt to Stoddart and securing possession and cancellation of the bonds, it did not resume payments to Insley although had the contracts remained in force some commissions would have been due.

Insley therefore brought this suit not for a sum certain but asking for an accounting since he has no knowledge of policies which may have lapsed or been paid because of the death of the insured.

The trial judge found for the defendant on the ground that the plaintiff by attempting to assign his renewal commissions without the Company's consent had forfeited his right to them as provided in the clause contained in all the agreements and quoted above. The application of this clause is the sole question now to be considered.

We may observe first that the right to commissions is a right or claim under the contracts, witness the fact that the plaintiff could not plead his case without declar-

ing on the contracts. Second, the right was assigned without the Company's written consent. Third, the clause in question provides that such unauthorized assignment of "any of the rights, claims or interest" under the contract shall "immediately make this contract void and be a release in full to the said company of any and all their obligations under same", while the 23rd section of the general agent's and the 13th section of the agent's contract explicitly state that upon a failure to comply with any of their conditions "all commissions and claims whatsoever accruing hereunder to the said agent shall become forfeited and void".

This language presents no ambiguity whatever and if it be given its clear meaning "any right" must be held to include the right to commissions and "all obligations" the obligation to pay commissions. To except the matter of commissions from such comprehensive terms would be to rewrite the contract for the parties. The only question then is whether the law will countenance the forfeiture so clearly provided.

As the plaintiff concedes, provisions in contracts prohibiting assignment have repeatedly been sustained by the courts of this and other states and the assignee has been held to have acquired no rights against the obligor, but whether, if the contract so provides, the obligation to the assignor can thus be avoided does not appear to have been directly decided in Pennsylvania. By way of dictum Untermeyer, J., in Sacks, etc., v. Neptune Meter Co., 144 Misc. 70, 76, observes that an obligor may circumscribe performance by whatever conditions it sees fit, including prohibition of assignment. In a separate opinion in the same case however Frankenthaler, J., points out that this statement is somewhat too broad, for when the obligation is simply a debt it is property in the hands of the creditor and the debtor can no more restrain alienation of it than he could of a horse he had sold, citing Mr. Justice Holmes in Portuguese-American Bank of San

Francisco v. Welles, 242 U. S. 7. In passing we may observe that the Sacks case, supra, was decided by the majority of the court in favor of the assignee on the ground that the contract simply contained a promise not to assign, for breach of which the obligor might have an action against the assignor but was not released from his obligation to pay. Frankenthaler, J., concurred in the result on the ground, as indicated above, that a mere debt is always assignable.

It has been suggested that the theory of debt applies to the case before us for though the renewal commissions were still payable in the future they nevertheless represented compensation which had been completely earned by the agent when the policies were written. However the liability for future commissions can by no means be deemed a debt owing at the time of the assignment for it accrued not unconditionally but only in the event the insured did not die or allow the policy to lapse. Furthermore it is common knowledge that an agent is expected to "service" the policies he writes and even if his agency terminates, his stake in future premiums will lead him to exhort policyholders to keep up their payments. Therein lies at least one obvious reason for the company's desire to limit assignment of the commissions.

The plaintiff has cited the case of Inter-Southern Life Ins. Co. et al. v. Humphrey, 122 Miss. 579, 84 So. 625, in which it was held that an assignment of commissions as collateral for a loan was not an unconditional assignment and did not violate a provision in the contract similar to that before us with the result that the company's liability was not thereby avoided. It seems to us that this action of the learned court was equivalent to writing the word "unconditional" into the contract and then holding that if an assignment be not unconditional it is nothing. We cannot follow this and indeed the distinction drawn between conditional and unconditional assignments appears to us to be altogether foreign to a contract which stipulates against any assignment.

We think the mandate of the law and the ends of justice require us to interpret contracts to mean what they plainly say and as we find no public policy and no authority either binding or persuasive under which this plaintiff should be allowed recovery upon a right he so clearly forfeited by his own action, we overrule the motions for a new trial and for judgment non obstante veredicto and grant an exception to the plaintiff.