220 So.2d 815 (1969)
MERCHANTS AND FARMERS BANK OF MERIDIAN, Mississippi
v.
Arvah C. McCLENDON, d/b/a McClendon Building Service and Fidelity and Deposit Company of Maryland.
No. 45264.
Supreme Court of Mississippi.
March 17, 1969.
Rehearing Denied April 7, 1969.
*816 White & White, Gulfport, for appellant.
Greaves & Terry, Everett E. Cook, Mize, Thompson & Mize, Gulfport, for appellees.
JONES, Justice:
Appellant sued H.C. Ladner, Jr., doing business as Ladner Brothers Company, and Arvah C. McClendon, doing business as McClendon Building Service Company, in the Circuit Court of Harrison County for about $20,000 furnished Ladner Brothers Company to pay for building supplies. For clarity, we shall refer to those parties as "McClendon" and "Ladner" and "Bank."
After transfer to chancery court, a plea of nonjoinder was filed and the Bank was required to make parties defendant: Fidelity and Deposit Company of Maryland, Southern Pipe and Supply Company, Inc., and Southern Electric Supply Company, Inc. No relief was sought by the Bank against the three additional parties. The plea of nonjoinder was made by McClendon in order to file a cross-bill against such parties  which he did.
Subsequently, the bill was dismissed without prejudice as to the two supply companies.
The Bank sought to dismiss without prejudice as to the bonding company but this motion was overruled.
The court entered a decree against Ladner, who filed no answer, for $18,005.40 with interest; it dismissed the bill with prejudice as to McClendon; and dismissed with prejudice the bill and cross-bill as to Fidelity and Deposit Company of Maryland.
The case comes here on appeal by the Bank, presenting, in reality, only two questions:
(a) Should the Bank have been permitted to dismiss without prejudice as to the bonding company?
(b) Was the dismissal of the suit against McClendon with prejudice proper?
*817 An affirmative answer to these questions will render the numerous other assignments of no consequence.
McClendon was the prime contractor for construction of Phase II of a shopping center in the City of Gulfport; H.C. Ladner was subcontractor for the mechanical work in connection therewith.
McClendon was permitted by his contract with the owner to subcontract conditionally. His contract, Section 2-10 subsection (d) "Subcontracting", provided:
The Contractor shall cause appropriate provisions to be inserted in all subcontractors relative to the work to bind subcontractors to the contractor by the terms of the General Conditions and other Contract Documents insofar as applicable to the work of subcontractors and to give the Contractor the same power as regards terminating any subcontract that the owner may exercise over the contractor under any provision of the contract documents.
Section 2-11 thereof in the first sentence read:
The Contractor shall not assign the whole or any part of this contract or any moneys due or to become due hereunder without written consent of the Owner.
The section then stated what the assignment should provide, when and if the prime contractor agreed to such assignment.
The plans and specifications, being a part of McClendon's contract, had these provisions:
ASSIGNMENT

Neither party to the Contract shall assign the Contract or sublet it as a whole without the written consent of the other, nor shall the Contractor assign any moneys due or to become due to him hereunder, without the previous written consent of the Owner.

Article 37
RELATIONS OF CONTRACTOR AND SUBCONTRACTOR
The Contractor agrees to bind every Subcontractor and every Subcontractor agrees to be bound by the terms of the Agreement, The General Conditions of the Contract, the Supplementary General Conditions, the Drawings, and Specifications as far as applicable to his work, including the following provisions of this article, unless specifically noted to the contrary in a subcontract approved in writing as adequate by the Owner or Architect.

The Subcontractor agrees 
a) To be bound to the Contractor by the terms of the Agreement, General Conditions of the Contract, the Supplementary General Conditions, the Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.

Ladner, in his contract, incorporated the terms of McClendon's contract, which included plans and specifications applicable to his (Ladner's) contract.
Part of his agreement was that:
The terms of the Contract between the Owner and the Contractor apply to this Agreement, including $200.00 per day as liquidated damages for delay in completion.
Section six said:
This contract shall not be assigned by the Subcontractor without first obtaining permission in writing from the Contractor.
The provisions of the owner's contract were applicable to the subcontractor, but Ladner, on September 11, 1963, executed *818 and delivered to the Bank an assignment as follows:
ASSIGNMENT
TO: McClendon Building Service Gulfport, Mississippi
For value received, the undersigned contractor hereby irrevocably assigns, transfers and sets over unto Merchants & Farmers Bank, Meridian, Mississippi the entire earned and unearned proceeds of that certain contract described as follows:
Contract dated August 27, 1963, covering mechanical construction on Phase II, Hardy Court Shopping Center, Gulfport, Mississippi
and hereby authorizes and requests that said proceeds be paid directly and exclusively to said assignee.
In Testimony Whereof Witness my signature on this the 11th day of September, 1963.
 LADNER BROTHERS COMPANY
 BY: H.C. Ladner, Jr.
On September 12, 1963, the Bank wrote McClendon:

MERCHANTS & FARMERS BANK

MERIDIAN, MISSISSIPPI

September 12, 1963
McClendon Building Service
Gulfport, Mississippi
Gentlemen:
Enclosed is assignment by H.C. Ladner, Jr., dba Ladner Brothers Company, Handsboro, Mississippi, in favor of this bank of contract dated August 27, 1963 covering mechanical construction of Phase II, Hardy Court Shopping Center, Gulfport, Mississippi, in the amount of $24,871.00, said assignment being collateral to a loan. If it is agreeable for this contract to be assigned, please execute the enclosed Acceptance of Assignment, in duplicate, return the original for our files, and retain the duplicate for your records. Also, you may retain the enclosed assignment for your files.
We would appreciate your making the proper record to make all payments on this contract direct to this bank.
Thanking you for your cooperation in this matter,
 Yours very truly,
 President
 REY/mv
 Encls.
 cc-Sou. Pipe
 (emphasis added).
With this letter, the above-quoted assignment was enclosed, together with an acceptance for execution by McClendon, as follows:
ACCEPTANCE OF ASSIGNMENT
The undersigned McClendon Building Service, Gulfport, Mississippi hereby acknowledges notice of the assignment by H.C. Ladner, Jr., D/B/A Ladner Brothers Company, P.O. Box 68, Handsboro, Mississippi of the proceeds of that certain account or contract described as:
Contract dated August 27, 1963, covering mechanical construction of Phase II, Hardy Court Shopping Center, Gulfport, Mississippi
and hereby agrees to pay directly and exclusively to the assignee, Merchants & Farmers Bank, Meridian, Mississippi all sums of money now due, or that may hereafter become due on said account or contract.
This the ____ day of ____, 19__
 MCCLENDON BUILDING
 SERVICE
 Gulfport, Mississippi
 BY: ______________________
 (Title)
*819 Of course the Bank had, or was charged with, notice of the contract mentioned in the assignment.
On September 17, 1963, before the Bank had advanced any money, if that be material, McClendon wrote them:
 McCLENDON BUILDING SERVICE
 (EMBLEM)
 ------------------------------------------------------------
 ARVAH C. McCLENDON - PHONE 843-3672 - P.O. BOX 880
 1639 - 22nd Street
 Gulfport, Mississippi 39502
 September 17, 1963
 Merchants & Farmers Bank
 P.O. Box 1151
 Meridian, Mississippi
 RE: PHASE II
 HARDY COURT SHOPPING CENTER
 GULFPORT, MISSISSIPPI
Gentlemen:
This is to advise that we will not accept assignment of the proceeds or any portion of the proceeds of that Sub-contract Agreement between McClendon Building Service and Ladner Brothers Company for Mechanical Work on the referenced job.
 Very truly yours,
 McCLENDON BUILDING SERVICE
 BY: Arvah C. McClendon 
 Arvah C. McClendon
 ACM/him
 cc: Ladner Brothers Company
 Attn: Mr. H.C. Ladner, Jr.
The Bank paid no attention to this letter.
Insofar as question (a) is concerned, the court, on motion of the Bank, should have permitted it to dismiss its bill without prejudice as to the bonding company and the decree of the lower court is modified so as to dismiss the said bill without prejudice as to the Fidelity and Deposit Company of Maryland, as surety on the bonds of Ladner. Said company had executed two bonds for Ladner  a performance bond, and a subcontract Labor and Material payment bond. The decree is modified so that the Bank, if it desires, may seek relief on either or both of those bonds in other proper proceedings.
Question (b) is a legal question, of course. Appellant relies upon three Mississippi cases: Ewin Eng. Corp. v. Deposit Guar. Bank & Trust Co., 216 Miss. 410, 62 So.2d 572 (1953); Spengler v. Stiles-Tull Lumber Co., 94 Miss. 780, 48 So. 966 (1908); Inter-Southern Life Insurance Co. *820 v. Humphrey, 122 Miss. 579, 84 So. 625 (1919).
In the first two of these cases, there was no agreement prohibiting assignment of the contract and, therefore, they throw no light upon the issue here.
Humphrey is distinguishable too. The assignors there, as agents, had a contract with the Insurance Company whereby they received a commission on new business obtained by them and on renewal premiums thereon. The contract prohibited assignment of commissions without approval by the company. The assignors were indebted to Humphrey for $9,500 evidenced by a promissory note secured by their claims for commissions accrued or to accrue, along with other choses in action. The assignment provided for public sale of such collateral, on default, in payment of the note and application of the proceeds to payment of the note.
Beyond question, these commissions were assigned as collateral.
The assignee did not become the real and unconditional owner of the commissions.
This Court said in that opinion:
In our investigation of the question we find that the parties may in terms prohibit the assignment of any contract, and that such prohibition is valid and binding, but whether such assignment as collateral security, as contradistinguished from a complete, unconditional assignment of the full title, is invalid is an inquiry of considerable difficulty in the particular character of contract before us. 122 Miss. at 591, 84 So. at 626.
Although this may be dicta, it states the court's finding as to general assignment.
The assignment in the present case (copied above) was a general assignment. Ladner retained no ownership of the payments.
He was not and never became indebted to the Bank. The plan of operation was this: Ladner would make a purchase and draw a draft on the Bank. Before honoring this draft, the Bank would contact one of the "Southern" companies, which would execute a note to the Bank for the amount of the draft, and receive the draft which had been paid by the Bank.
Ladner's contract, which embraced the prime contract and plans and specifications, prohibited the assignment of the contract or its proceeds.
The Court in Humphrey also stated, whether dicta or not:
Prohibition in a contract against assignment is legal and valid. The right to make a personal contract or to agree for the performance of a contract by a certain party to the exclusion of all others is obviously legitimate. Such contracts are often made with a view of retaining the personal interest and action of the payee, which purpose might be defeated should the contract or the fruits of it be unconditionally assigned to some stranger. 122 Miss. at 592, 84 So. at 626.
Humphrey cited and followed Aetna Insurance Company v. Smith, McKinnon & Son, 117 Miss. 327, 78 So. 289, L.R.A. 1918D, 1158 (1918), in which case the assignee held a note secured by a deed of trust on the store building and lot of assignor. The assignor assigned a fire insurance policy on the building as collateral security with the deed of trust. The policy prohibited assignment before loss. The Court held this applied to a general assignment and not one for collateral security.
The proceeds of the contract in the present case were assigned even before any were due. As stated, this was a general assignment. Ladner retained no interest in the proceeds, and there was no provision for any payment of any sort to him presently or ever. There is good reason in a case such as this to prohibit assignment (except with consent) as the contracts here did. For instance, the owner or prime contractor would want to be as certain as possible that performance would proceed *821 with due diligence, that materials would be obtained without delay, and that work would continue; rather than having laborers stop because of delay in payment, or non-payment  regardless of bond.
We believe that the above Mississippi cases are easily distinguished, and that the prohibition in the contracts here against assigning the contract, or its proceeds, should be upheld. Restatement of Contracts, Ch. 7, § 151 (1932):
WHAT RIGHTS CAN BE EFFECTIVELY ASSIGNED
A right may be the subject of effective assignment unless,
(a) the substitution of a right of the assignee for the right of the assignor would vary materially the duty of the obligor, or increase materially the burden or risk imposed upon him by his contract, or impair materially his chance of obtaining return performance, or
(b) the assignment is forbidden by statute or by the policy of the common law, or
(c) the assignment is prohibited by the contract creating the right.
See also 6 Am.Jur.2d Assignments § 16 (1963).
Money due or to become due under a contract.
The general rule is that the right to receive money due or to become due under an existing contract may be assigned even though the contract itself may not be assignable. A contract to pay money may be assigned by the person to whom the money is payable, unless there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned.
The Bank, as stated, was charged with notice of the provisions of the contract, which was specifically described in the assignment. A reading thereof, and the papers included as a part of it, would have disclosed the prohibitions against assignments, if the Bank was not already aware of such.
We think it right and proper that an owner in construction contracts should have the power to prohibit assignments because they could hamper and hinder both the progress and the calibre of performance.
The specifications herein were prepared by architects who, of course, are experienced in such matters, and the fact that they provided the prohibition against assignment, lends weight to the right, and perhaps necessity, for the owner to so contract.
The owner's contract with the prime contractor permeates, and is a part of, the subcontractor's agreement.
Affirmed with the decree modified as to the dismissal against Fidelity and Deposit Company of Maryland hereinbefore stated.
Affirmed as modified.
ETHRIDGE, C.J., and RODGERS, BRADY and INZER, JJ., concur.

ON MOTION TO RETAX COSTS
The facts about this case are shown in the original opinion rendered March 17, 1969. The appellant has now filed a motion to retax the costs. All the costs were originally taxed against the appellant. One of the assignments of error on direct appeal was that the Court erred in not permitting it to dismiss without prejudice its suit against the bonding company which had bonded the subcontractor, Ladner. On this issue, appellant prevailed in this Court. So the decision granted appellant a part of the relief sought. We are of the opinion that the motion to retax the costs should be sustained. However, making the said bonding company a party defendant added very *822 little to the cost of the record. We are, therefore, directing that the Supreme Court costs be retaxed, with eighty-five percent thereof against the appellant and the remainder, fifteen percent, against the appellees.
Motion sustained.
ETHRIDGE, C.J., and RODGERS, BRADY and INZER, JJ., concur.