Seale-Lily Ice Cream Co. *v.* Buck.

(In Banc.   Oct. 11, 1943.)

[16 So. (2d) 213.   No. 35412.]

Brunini & Brunini, of Vicksburg, for appellant.

442

**Vollor & Teller,** of Vicksburg, for appellee.

Alexander, J., delivered the opinion of the court.

Natalie Buck, a minor fourteen years of age, brought suit to recover the sum of $100 as a prize alleged to have been won by her in a merchandising plan inaugurated and conducted by the Seale-Lily Ice Cream Company.

This plan, of which widespread notice was given to the public, was as follows: Any person who visited either of the two stores of defendant in the City of Vicksburg was allowed to register his name and address and upon any visit to either store was allowed to receive a ticket stamped with the date of such visit. It was not a condition that the visitor make any purchase.

The form of the registration card was as follows: "Necessary to register only once. Name ————. Address ————. Phone No. ——. I can be located around 10 o'clock in the morning at ————." It was necessary to register only once, and this card was filed with others alphabetically. The tickets bore the following form: "Win $2.00 to $100.00 free. Keep this identification ticket, it shows you visited one of our stores on the date below. Date ————. Seale-Lily Ice Cream Stores, 2209 Washington Street, 3600 Washington Street." On the reverse was printed: "Notice. To win you must have a ticket on your person when called upon bearing date of the day before the drawing. See circular for details."

Each morning about 10 o'clock a name is drawn from the box of names and the address of the person whose name is drawn is obtained from his registration card on file. Immediately thereupon the manager or other officer proceeds to the address given and undertakes to locate the successful person. It is conceded that the purpose of the card is to serve as a guide to the whereabouts of this person and that reasonable clues obtained at the address would be followed until he was located or the trail ended. At one o'clock P. M. of the same day, the name drawn is posted at the window of the main store. The amount of the prize was initially $2 but if the winner is not located, this amount is added to a like amount for the following day and so cumulatively until a winner is found. The maximum award, however, is $100.

The suit was filed in the county court of Warren County and, a jury being waived, the case was tried to the court

on the law and facts. Judgment was rendered for plaintiff in the sum of $100. The cause was appealed to the circuit court and there affirmed, whence an appeal here. The trial court was justified in finding that the defendant's representative in an endeavor to locate plaintiff went to the address given on the registration card, 1101 Grove Street, where was located a large frame house containing two apartments facing Grove Street and a third apartment facing Adams Street. A lady at the address given responded to his call who stated that plaintiff did not reside there and was unknown to her. The fact was that plaintiff resided at the address when she registered but had moved about seven months before and was at the time of the drawing living at 1208 Clay Street in said city. Defendant's representative made no further inquiry at the address given although the conversation with his informant disclosed that a lady occupied the apartment upstairs but he was told she was not in. Thereupon, he returned to the store and posted plaintiff's name on the window at the store. Her demand later for the prize was rejected.

At the time the above inquiry was made, plaintiff was attending school at a local academy and had her dated card with her. The point is not seriously pressed that she did not have the proper card "on her person" but it is relevant to note that she testified that she had it with her in one of her school books, in which connection it was shown that an award had been paid to another patron who was a pupil of the same academy and was not located at the address given but at picnic grounds in the National Park. Moreover, this patron did not have her ticket "on her person" but in her automobile about a block away.

The authorities cited by defendant, appellant here, are acceptable upon the general principles applicable to such contracts where an offer to the public is accepted by an individual. These authorities need not be set out here. It is sufficient that these cases require that the offer be

accepted according to the terms fixed by the offeror. The trial court was justified in the finding, implicit in his judgment, that the dates upon the plaintiff's card were placed there by the defendant and conformed to the requirements. The concession that only a substantial compliance by the offeree is necessary is found in appellant's citation to Scott v. People's Monthly Co., 129 Iowa, 503, 228 N. W. 263, 67 A. L. R. 413, 416, citing 34 Cyc. 1743.

In view of the finding of the trial judge, the main issue here presented is not whether plaintiff followed the printed rules, but whether defendant followed the implied conditions thereof. It is clear that a party in the position of defendant could not be held to have carried out the conditions of his undertaking by merely drawing a name without any effort to locate the successful party. The undoubted purpose of the address upon the registration card was, as contended by the defendant, to furnish a guide to the whereabouts of the winner. It was to be followed out with reasonable diligence, either to locate the winner or to obtain a workable clue to his whereabouts. There was no condition that a patron remain at the address given at all times nor continually between the hours of 10 a. m. and 1 p. m. On the other hand, it is clear that the defendant's plan and practice was to devote this period to a reasonable attempt to locate the addressee and that in the instant case, a search, if successful, would have disclosed a qualified winner.

We hold therefore that in the circumstances presented here there is an implied condition that the offerer will use reasonable diligence to locate its successful patron within the time limits, using the address or other information on file as a guide in its search. There is no exact definition of reasonable diligence but it represents a degree between absolute inaction and an extreme effort undertaken against apparent futility. It must be more than merely perfunctory. It is no answer to urge that defendant had on file some twenty thousand cards. The difficulty in locating plaintiff is to be measured as if hers was

the only card on file. There was no duty or condition which required her to furnish a new address, even though a failure to do so placed upon her the hazard that even reasonable diligence by the defendant would not disclose her whereabouts.

The decision of this issue was for the trial court upon the facts, and unless wholly unreasonable and untenable we must accept it regardless of what any individual member of this court would, as a trier of the facts, have decided. The trial court may have taken into account any one of several relevant considerations; for example, the availability of judicially recognized avenues of information; or the readiness with which the defendant accepted a single inquiry as an exhaustive research; or the probability that the fact that the maximum award was at stake was an unconscious factor in diminishing the zeal of defendant's representative. In any event, we are concerned, however, solely with his conclusions and the fact that the legal principles involved make reasonable diligence an implied element in defendant's contract, and such issue was one of fact for the trial judge. We have no justifiable basis for displacing his judgment.

Affirmed.

**Smith, C. J.**, delivered a dissenting opinion.

On the evidence appearing in this record, the court below should not have awarded the appellee a recovery.

The requirement here that the appellee set forth on her registration card the place at which she could ''be located around ten o'clock in the morning'' was admittedly for the purpose of enabling the appellant to find her when she became the winner at one of its prize drawings. From this, it necessarily follows that she should either have been there then, or, if not, that one calling there then could obtain information by which she could be found, prior to one o'clock P. M. of that day, at which time, according to the evidence, the appellant's obliga-

tion to continue to try to find her ceased, as well as her right to the prize if she had not then been found. The appellant's only duty to the appellee in this connection was to inquire for her at the address given it by her; this duty its agent fully met and his failure to ascertain her then whereabouts was not his but her fault alone.

What occurred in this connection was this: When the appellee registered with the appellant she lived at and gave as her address 1101 Grove Street, at which she was then living with her mother. Seven or eight months before the day on which her name was drawn as the winner of this prize, her mother removed therefrom to another part of the city. She accompanied her mother and was living there with her at the time of this drawing. She did not notify the appellant of this change in her address and it knew nothing of it. On the morning and after the appellee's name was drawn as the winner of this prize, Montgomery, an agent of the appellant, went to the address the appellee had given and found a two-story house at the corner of Grove and Adams Streets, consisting of three apartments, two of them on the ground floor and one above. One of the ground floor apartments faced on and was entered from Adams Street, the other ground floor apartment and the one above both faced on and were entered from Grove Street, each having separate entrances therefrom. Each of these apartments had separate street numbers on their front steps and above their front doors, the number of the one on Adams Street and of the upper apartment does not appear but the number of the one on the ground floor facing Grove Street was 1101, the number of the apartment in which the appellee lived when she registered with the appellant seven or eight months before, and at which she had advised the appellant that she could be located. Montgomery found that the apartment numbered 1101 was then occupied by Mrs. Allred who informed him that the appellee was not there, that she, Mrs. Allred, had lived in the apartment about six months and that she did not know the

appellee nor where she could be found. The occupant of the other apartment was not at home and Mrs. Allred so informed Montgomery, and he made no further attempt to find her. Whether the occupant of the Adams Street apartment was at home or not does not appear and Montgomery made no attempt to ascertain her whereabouts. The appellant was under no duty to the appellee, and consequently its agent Montgomery was not, to inquire for her at either the Adams Street apartment or the upper apartment on Grove Street. Moreover, if Montgomery had inquired at the second, his inquiry would have been fruitless.

The judgment of the court below should be reversed and the cause dismissed.

**Roberds** and **Griffith, JJ.,** concur in this dissenting opinion.