EWIN ENGINEERING CORP. *v.*
DEPOSIT GUARANTY BANK & TRUST COMPANY.

Feb. 2, 1953

No. 38625 18 Adv. S. 17 62 So. 2d 572

*Morse & Morse,* for appellant.

*James L. Spencer,* and *Watkins, Edwards & Ludlam,* for appellee.

KYLE, J.

The Deposit Guaranty Bank and Trust Company, as plaintiff, recovered a judgment against the Ewin Engineering Corporation, defendant, in the circuit court of Harrison County, for the sum of $1,105.20; and from that judgment the Ewin Engineering Corporation prosecutes this appeal.

The facts alleged in the plaintiff's declaration and testified to by James H. Swann, the plaintiff's vice president, were substantially as follows: That on July 19, 1951, one I. H. Girod borrowed from the plaintiff-bank the sum of $1,100.00 and executed a note therefor payable to the plaintiff-bank sixty days after date, and to secure the payment of the note Girod executed and delivered to the plaintiff-bank an assignment of the proceeds due and owing to him, and to become due and owing to him, on a purchase order contract which had been awarded to him by the Ewin Engineering Corporation for the installation of furring (metal) and lathing on the ceilings and walls in 138 bathrooms in barrack-type buildings at

Keesler Field, at Biloxi, Mississippi. The barrack-type buildings were being erected by the Ewin Engineering Corporation for the United States Government on a cost plus a fixed fee basis. The plaintiff-bank, after making the loan, immediately notified the Ewin Engineering Corporation in writing of the making of the loan and the execution of the assignment. The Ewin Engineering Corporation did not acknowledge receipt of the assignment until September 4, 1951, when C. R. Byrd, the office manager of the corporation, wrote the bank a letter advising the bank that it had not accepted the assignment, and that the corporation had paid Girod the sum of $1,105.20 in full settlement of the amount due for the work that he had performed. And in the same letter Byrd advised the bank that Girod had given up his contract, and that he understood that Girod had filed a petition in bankruptcy.

The defendant in its answer admitted that it had received notice of the purported assignment on or about July 23, 1951, but alleged that the purported assignment was not binding on the defendant for the reason that if it had acknowledged the validity of the assignment it would have impaired the defendant's chance of obtaining I. H. Girod's performance of his contract; and the defendant denied that it was liable to the plaintiff for the amount sued for. The defendant in its answer gave notice of affirmative matters which it expected to prove in defense of the suit, as follows: That Girod did not furnish bond for the payment of labor to be employed by him for the performance of his contract, and that the assignment was void under Section 373, Code of 1942; that payments were made to Girod during the progress of the work to cover his payrolls for labor; and that unless these payments had been made to Girod he could not have met his payrolls; that Girod finally defaulted on his contract and did not complete the same; and that the defendant had never formally accepted the assign-

ment, and therefore no liability was imposed on the defendant by virtue of the assignment.

B. L. Taylor, the project manager for the Ewin Engineering Corporation, admitted that the corporation had received the notice of the assignment, but stated that the company did not consider that the assignment had been accepted by the corporation. Taylor testified that two progress payments were made to Girod after the notice of the assignment was received by the corporation, although the purchase order or contract under which Girod was doing the work did not provide for progress payments before the work was completed. Taylor stated that Girod made known to the corporation that he needed money to carry on the work and to meet his payroll, and that the progress payments were made to him for the work done, but that ten per cent of the estimated amount of the money earned was withheld until the final payment was made to take care of any inaccuracy in the work. Taylor admitted that at the time each of the payments was made to Girod all labor had been paid by Girod, and that there were no unpaid bills then owing by Girod for labor, so far as he knew. Taylor was asked the direct question, "Did you withhold any money from I. H. Girod on this section of the contract?" referring to the subject of unpaid bills for labor. His answer was, "No, Sir." He was then asked the question, "Was your refusal to pay the bank based on this?" and his answer was "No, sir, it was based on the fact that we had never accepted the assignment." Taylor admitted that the corporation had never received any notice from laborers or materialmen, who had furnished labor or material to Girod in the course of the performance of the contract, and he admitted that the corporation had never attempted to pay Girod's laborers directly. Taylor testified that Girod had not been required to execute a performance bond at the time the purchase order contract was awarded to him.

C. R. Byrd, the office manager for the corporation, testified that he received the assignment on July 23; that he told Girod that it would take a month to get it processed, and that the corporation could make weekly payments to him on the contract so that he could meet his payrolls; and that he then delivered to Girod the copy of the assignment which he had received from the bank, so that Girod could take it back to Jackson. Byrd testified that two progress payments were made to Girod, and then a final payment. On cross-examination Byrd admitted that at the time each progress payment was made to him Girod was required to make an affidavit showing that all labor furnished by him during the week had been paid. Byrd admitted that he had not received any notice at any time from Girod's laborers that they had not been paid, and that he had received no stop notices of any kind. He was asked whether the money paid to Girod was used to pay labor. His reply was, "We only took his word."

B. L. Taylor identified, and the defendant offered in evidence, a letter written by Girod to the Ewin Engineering Corporation on August 24, 1951, in which Girod stated that he could not do the work for the contract price which he had agreed to, and that he was forced to default on the contract. Three days later the Ewin Engineering Corporation paid to Girod the retained 10 per cent of the amount which he had earned under the contract, and Girod executed a written acknowledgment of same and released the government and the corporation from all future claims on account of the project.

At the conclusion of the testimony the court granted to the plaintiff a peremptory instruction directing the jury to return a verdict for the plaintiff.

The appellant's main argument on this appeal is that the court erred in granting the peremptory instruction requested by the plaintiff. The appellant contends that the appellee had notice that Girod's contract was solely

for labor, that Girod had not been required to give bond as provided in Section 373, Code of 1942, and that the plaintiff-bank knew or should have known that its claim to the proceeds of Girod's contract were subordinate to the rights of the laborers employed by him in the performance of the contract, and that the appellant had a right to defend the suit by proving that the claims of the laborers had absorbed all the money paid by the appellant to Girod. The appellant's attorneys cite in support of their contention the cases of Dickson v. United States Fidelity & Guaranty Co., 150 Miss. 864, 117 So. 245, and R. B. Tyler Co. v. Laurel Equipment Co., 187 Miss. 590, 192 So. 573.

In the case of Dickson v. United States Fidelity & Guaranty Co., supra, the Court pointed out that prior to the adoption of Chapter 128, Laws of 1918, money due a contractor under a building contract was not impressed with any trust or equity in favor of materialmen and laborers furnishing materials and labor going into the construction of a building. Such funds, under the contract, belonged to the contractor absolutely, who had the right to assign or otherwise dispose of them as he saw fit, although to the prejudice of such laborers and materialmen. Spengler v. Stiles-Tull Lumber Co., 94 Miss. 780, 48 So. 96; 19 Ann. Cas. 426. "But" the Court in its opinion in the Dickson case added, "that is not true now since the adoption of that statute, unless the contractor gives the bond provided by Section 3 of the statute, (Section 2598, Hemingway's Code, 1927), quoted above. If the contractor does not give the bond provided by the statute, laborers and materialmen have an equity under Section 1 of the statute, Hemingway's Code 1927, Section 2596, in the funds due the contractor by the owner of the building. . . . The purpose of the bond section of the statute was to provide for the protection of materialmen and laborers, the bond being in lieu of their equity in the funds arising out of the building contract."

In the case of R. B. Tyler Co. v. Laurel Equipment Company, 187 Miss. 590, 192 So. 573, the Court recognized █ the right of a subcontractor in a case of this kind to assign all or a part of the proceeds of his contract, subject to the equities of materialmen and laborers. But the Court in its opinion said: "We think the rule must be accepted as well settled under the authorities, that, so far as the assignment itself is concerned, one to whom a contractual right is assigned, takes such right subject to the burden of the provisions of the contract by which, and under which only, the assigned right would accrue to the assignor, or as otherwise sometimes expressed, the assignee is bound by the terms of the contract to the same extent as the assignor. 4 Am. Jur. pp. 234, 235, 311, 312. The assignment of a contractual right confers only the right which the assignor has therein, and no more. 6 C. J. 5, p. 1156. All this is upon the obvious proposition that a party may not transfer to another something which the transferrer does not own or to which he has himself no ultimate right." And the Court in its opinion also said: "In fact, a right under a contract may not be assigned at all if the substitution of a right of the assignee for the right of the assignor would (1) vary materially the duty of the obligor, or (2) increase materially the burden or risk imposed upon him by his contract, or (3) impair materially his chance of obtaining return performance. Section 151. A. L. I. Rest. Contracts."

But this is not a suit to enforce the equity of laborers in the funds due the subcontractor by the Ewin Engineering Corporation. The laborers have all been paid, either out of the funds which Girod borrowed from the bank, or out of the funds paid to him by the Ewin Engineering Corporation, or out of funds derived by him from some other source. And we do not think that the Ewin Engineering Corporation, by proof of the facts set forth above, has brought itself within the protection of the rule

applied in the R. B. Tyler Company case. The Court in stating the facts in that case said:

"No person was introduced as a witness who testified as to the terms of the contract between appellant and Broome. Apparently, it was not in writing. What was actually done by them, however, was that appellant at the end of each week paid all the payrolls of Broome for his truck drivers and other help; paid for the gasoline and oil used in operating the trucks; paid for the repairs thereon, and deducted this from the total truck time for the week, and thereupon paid the entire balance to appellee, the Laurel Equipment Company. We must assume that the terms of the contract between appellant and Broome provided for this course of procedure; for what the parties to a contract consistently do thereunder throughout is evidence, indeed is often the best evidence, of what the contract between them required that they should do. And besides this, the proof discloses that appellee knew, or had knowledge sufficient to put it on notice, that Broome was without means to pay these necessary operation expenses except out of the current proceeds of the contract, and that without its being handled in the manner stated Broome could not have done the work at all."

On the basis of the facts thus stated in its opinion the Court in the R. B. Tyler Company case held that the amount due Broome under his contract should be determined by deducting from his gross earnings the amount paid out by the R. B. Tyler Company for labor, gasoline, oil and repairs, which had been paid for by the R. B. Tyler Company to enable Broome to carry out his contract; and the court held that Broome's assignee could demand no more than Broome was entitled to recover under the contract.

But, in the case that we now have before us, the proof does not show that the Ewin Engineering Corporation paid any of Girod's labor bills, or that Girod was with-

out means to pay his laborers, except out of the current proceeds of his contract. On the contrary, the proof shows that Girod borrowed the sum of $1,100.00 from the appellee-bank at the outset to enable him to pay his labor and get the work started. Neither Taylor nor Byrd testified that the Ewin Engineering Corporation used any of the funds which were earned by Girod under his contract for the payment of labor employed by Girod; but all of the funds which were subject to the assignment was paid to Girod directly. Byrd testified that, before making the progress payments to Girod, he required Girod to execute affidavits showing that all labor furnished by him had been paid.

It would be carrying the doctrine of subrogation entirely too far for the Court to say that under the facts disclosed by the record in this case the appellant can escape liability by claiming that all or a part of the funds paid to Girod directly after the appellant had received notice of the assignment, may have been used by him in paying for labor.

Nor does it appear from the record that the assignment which Girod gave to the bank impaired materially the engineering company's chance of obtaining return performance. Girod did not testify as a witness. But neither Taylor nor Byrd claimed that Girod gave up his contract because he was behind in paying his labor bills. According to their testimony Girod gave up his contract because he saw that he was not making any money out of it; and after Girod had defaulted on his contract, the engineering company paid him the retained percentage of the amounts earned by him up until that time. Taylor frankly admitted that the engineering company's refusal to pay the bank was not due to the fact that the money was being withheld for the payment of Girod's labor bills; but the refusal of the engineering company to pay the bank was based upon the claim that the engineering company had never accepted the assignment.

■■ Where a person knows of an assignment and either incurs additional obligations to the assignor or makes payment to him, or other persons, in preference thereto, he cannot escape liability to the assignee. Fennell, Admx., v. McGowan, 58 Miss. 261; Illinois Central Railroad Co. v. Bryant & Shackelford, 70 Miss. 665, 12 So. 592; Wells v. Edwards House & City Railway Co., 96 Miss. 191, 50 So. 628; Fuller Const. Co., et al. v. Allen Dredging Co., 162 Miss. 797, 140 So. 231.

■■ We think that the trial judge was justified in granting the peremptory instruction requested by the plaintiff, and the judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Arrington,* and *Ethridge, JJ.,* concur.