402 So.2d 856 (1981)
INTERNATIONAL HARVESTER COMPANY
v.
The PEOPLES BANK AND TRUST COMPANY.
No. 52727.
Supreme Court of Mississippi.
August 26, 1981.
*857 F.M. Bush, III, Thomas D. Murry, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, for appellant.
W.P. Mitchell, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, Gifford, Moore & Bolen, Booneville, for appellee.
Before PATTERSON, LEE and HAWKINS, JJ.
HAWKINS, Justice, for the Court:
International Harvester Company, a Delaware corporation, appeals from a judgment rendered against it by the Circuit Court of Prentiss County in favor of The Peoples Bank and Trust Company, a Mississippi banking corporation, in the amount of $9,915.44. We affirm.
Walden Corporation (Walden) was a business in Booneville engaged in making truck bodies and extending chassis on trucks. Its president was Mrs. Mamie Cain. On July 6, 1977, Walden transmitted to International Harvester Company (International) on Walden's letterhead a Sales Proposal Contract in three copies, duly executed by Mrs. Cain, for the construction by Walden of two truck bodies for the total price of $12,267.32, including tax. Delivery date thereon was specified as three to four weeks.
In the lower part of the form is the following printed language:
The above described truck bodies are to be used for demonstration purposes and are to be paid for in full no later than six (6) months from date of delivery.
Just below this, the instrument contains the following:
"ACCEPTED BY," and following this is the handwritten signature of "R.A. Roy." A written contract was thus entered into between these corporations.
Following this, on July 13, 1977, International transmitted to Walden its purchase order, executed by representatives of International, for 2 "Walden Truck Bodies Model # 3918 per your quotation of July 6, 1977," thereby authorizing Walden to proceed. There is further typed on the purchase order:
180 days deferred billing, or at such time as the chassis has been sold to a retail customer. The 180 days to start upon completion of the body and chassis installation.
At that time Walden had an outstanding indebtedness due The Peoples Bank and Trust Company (Peoples Bank) on a note in the initial amount of $67,000.00, dated *858 March 1, 1976, and on which Peoples Bank noted thereon it had security agreements and a financing statement. Neither the security agreements securing this note nor the financing statement are a part of the record, and the property secured thereby is therefore not shown.
To fulfill its contract with International it was necessary for Walden to borrow $8,500.00 from Peoples Bank. On July 18, 1977, Mrs. Cain as president of Walden executed a promissory note to Peoples Bank in the amount of $8,500.00, due January 18, 1978, with interest at 10 percent. The note contains the following language:
Maker has deposited with Bank, as collateral for payment of this and any and all other liabilities... the following property listed below ... hereinafter called collateral... .
Following this printed language is the typewritten notation:
Assignment of International Harvester Contract  Mr. Rob Roy, International Harvester Co., Tucker, GA. 30084. Contract Amount, $12,267.32.
Walden also on July 18, 1977, executed a security agreement to Peoples Bank on Mississippi Bankers Association Form 5, under which "Contract Rights" is checked, and beneath this paragraph is typed:
Assignment of Contract with International Harvester Company, 1726 Montreal Circle, Suite 18, Tucker, GA. 30084 in the amount of $12,267.32.
At the time Walden secured the loan from Peoples Bank, Mrs. Cain also delivered to Peoples Bank the executed Sales Proposal Contract of Walden and International, and Purchase Order issued by International. As to these two instruments, Mr. John Smith with Peoples Bank testified:
Q. How did these two documents get into your possession?
A. They were brought to me by Mrs. Mamie Cain who is associated with Walden Corporation.
Q. Did  when she brought them to you, did she take them back, or what happened?
A. No, sir, she left them with me and asked that we advance the funds with which she could obtain the materials to complete this job, and said that she had talked to International about assigning this to us and they were willing to do that.
On July 19, 1977, Mr. Smith wrote Mr. Roy the following letter:
 Mr. Rod (sic) Roy
 International Harvester Company
 P.O. Box 2002
 Tucker, Georgia 30084
 Dear Mr. Roy:
 Re: Walden Corporation
 P.O. Box 226
 Booneville, MS 38829
 Your Purchase Order
 DA586401
It is my understanding that Mrs. Cain, of Walden Corporation previously spoke with you about the fact that it would be necessary for her to use the contract between International Harvester Company and Walden Corporation for Walden Corporation to obtain the financing for the materials on the job. For such consideration, Mrs. Cain has assigned the interest of Walden Corporation in this contract to The Peoples Bank and Trust Company.
Therefore, we ask that any checks rendered to the Walden Corporation under this contract be made payable to both the Corporation and The Peoples Bank and Trust Company and mailed to the bank. Of course, since Walden Corporation will be named as a party to the payment order, it will be necessary that they be notified and endorse the item before it can be negotiated.
If it is permissible with your company, we would ask that you indicate your acceptance of this arrangement by signing in the space provided on the attached copy and returning it to us in the enclosed addressed postpaid envelope.
 Sincerely yours,
 /s/ John W. Smith
 John W. Smith
 Executive Vice President
 and Manager
*859
 ACCEPTED Rob A. Roy
 (signed)
 Marketing Mgr.
 (handwritten)
This letter, showing it had been accepted by Mr. Roy as marketing manager was returned to Peoples Bank and received by it July 25, 1977. The letter had been received by International July 21, 1977.
On November 15, 1977, International received from the Internal Revenue Service on Government Form 668-A (Rev. 3-77) a Notice of Levy, dated November 7, 1977, notifying International there was due and owing to the United States from Walden $71,952.75, in unpaid taxes. The tax assessment against Walden was October 3, 1977. This form contains the following language:
You are further notified that demand has been made upon the taxpayer for the above amount, and the taxpayer has neglected or refused to pay, and such amount is still due, owing, and unpaid. Accordingly, you are further notified that all property, rights to property, moneys, credits, and bank deposits now in your possession and belonging to this taxpayer (or for which you are obligated) and all sums of money or other obligations owing from you to this taxpayer, or on which there is a lien provided under Chapter 64, Internal Revenue Code, are hereby levied upon for satisfaction of the aforesaid tax plus all additions provided by law, and demand is hereby made upon you for the amount necessary to satisfy this tax liability or for such lesser sum as you may be indebted to this taxpayer, to be applied as a payment on this tax liability. Checks or money orders should be made payable to the Internal Revenue Service. (emphasis added)
The date of final completion of the truck bodies is not shown in the record. Walden finished one truck body, and substantially completed the other, but Walden apparently closed its plant, and the remaining truck body was completed by Truck Center, Inc., of Tupelo. The cost of completing the one truck body was $2,351.88, and International was submitted an invoice on Walden's letterhead dated July 6, 1977, for the total amount of the two truck bodies, less $2,351.88 for completion of one body, leaving a balance due under the contract of $9,915.44. A dim copy of Truck Center's invoice is in the record, and as best the Court can determine, it is dated March 14, 1978.
There is nothing in the record indicating whether or not International, upon receipt of the notice of levy on November 15, 1977, ever informed either the Internal Revenue Service of the previous assignment of the contract with Walden to Peoples Bank or Peoples Bank of the notice of levy served upon it.
It appears to the Court it would be quite unusual for these facts not to appear of record had International in fact informed either the Internal Revenue Service of the previous assignment, or Peoples Bank of the levy made upon it.[1]
In any event, after taking full advantage of the delay in making payment as it was authorized under the contract with Walden, International on October 23, 1978, upon advice of its legal department issued its check to the Internal Revenue Service in the amount of $9,915.44, with the notation "To Pay Monies Due Walden Corp. In Compliance with Notice of Levy, Dated 11-7-77."
Failing to receive any payment under the contract, Peoples Bank on January 26, 1979, instituted suit against International in the amount of $10,000.00, setting forth the above facts pertaining to the contract between Walden and International, and the assignment to Peoples Bank, and notice to and acceptance by International of the assignment to Peoples Bank of the contract.[2]
*860 International's primary defense was an affirmative defense and plea in bar in its Answer that payment to the Internal Revenue Service pursuant to the levy upon International discharged International from any liability to Peoples Bank.
In a pre-trial hearing on a plea in bar documentary evidence was adduced together with the testimony of Mr. Charles Hesse, regional comptroller of International, and Mr. John W. Smith, vice-president of Peoples Bank. Following the hearing and argument of counsel, the trial court rendered the following succinct opinion:
Gentlemen, it appears to the Court that when the Defendant was served with the levy, it made a judgment that it had property "subject to levy" as the statute calls for, and thereafter paid the property into the IRS. Under the case cited by the Plaintiff, it is the opinion of the Court that International Harvester did not have any property at that time that was subject to levy, and it made its own judgment however they did, they thought about it a long time. I am surprised they didn't come up with that theory, and some Mississippi cases have been cited by counsel appearing to substantiate that position, and it is the opinion of the court that the plea in bar is not well taken and will be denied.
The court then entered an order overruling the plea in bar. Thereafter the parties submitted the case to the trial court without a jury upon a stipulation of facts and the issues of law.
The trial court rendered judgment on June 17, 1980, against International and in favor of Peoples Bank in the amount of $9,915.44, from which this appeal has been taken by International.
Upon appeal International raises the same two issues as were before the circuit judge:
A. Whether, at the time it was served with notice of levy, International was in possession of property, rights to property, monies, credits or bank deposits belonging to Walden (or for which International was obligated) or any sums of money or other obligations owing from International to Walden.
B. Whether payment by International to Internal Revenue Service of $9,915.44 pursuant to notice of levy discharged International from any liability based upon its contract with Walden.
In view of the stipulation between the parties, these questions, embraced in an affirmative defense as a bar to the cause of action, constituted the only issues to be decided by the Circuit Court preliminary to rendering judgment. International carried the burden of proof on both the law and the facts to sustain this defense. Ricks Lumber Co., Inc. v. Natchez Steel and Pipe, Inc., 318 So.2d 883 (Miss. 1975); Mississippi Code Annotated Section 11-7-59 (1972).
The circuit judge heard the case without a jury. This Court must affirm the judgment unless the trial court was manifestly wrong. Ellis v. Pellegrini, Inc., 163 Miss. 385, 141 So. 273 (1932); Seale-Lily Ice Cream Co. v. Buck, 195 Miss. 440, 15 So.2d 213 (1943); Miller v. Board of Sup'rs. of Lafayette County, 198 Miss. 320, 22 So.2d 372 (1945); Kimbrough v. Smith, 201 Miss. 202, 28 So.2d 850 (1947); Hall v. State ex rel. Waller, 247 Miss. 896, 157 So.2d 781 (1963).
On the question of whether International had any money or credits belonging to Walden at the time of the Internal Revenue Service levy on November 15, 1977, International argues that because the assignment to the Bank was collateral security for a loan, it was not an absolute assignment.
There was substantial evidence in this sparse record to support a finding by the trial court the assignment was unconditional and absolute, thus dissipating this contention. Certainly, insofar as International was informed the assignment was unconditional. The letter of July 19, 1977, from Peoples Bank to International carried no implication other than a complete assignment, with a direction for payment to be mailed to the bank. The mere fact Peoples *861 Bank requested International to make the checks payable both to Walden and Peoples Bank did not necessarily lessen the import of the assignment. That was one method of keeping the records straight between the parties, insofar as payments made under this contract. There is nothing in the letter which states Walden made a collateral or conditional assignment. See Merchants & Farmers Bank of Meridian v. McClendon, 220 So.2d 815 (Miss. 1969).
Furthermore, while the note executed to Peoples Bank was signed both by Walden and Mrs. Cain individually, neither Walden nor Mrs. Cain were made parties to the suit, either as plaintiffs or defendants, indicating an understanding the assignment was complete. 6A C.J.S. Assignments Section 82, on page 732 states:
Generally, the intention of the parties ascertained from the entire transaction, including conduct, determines whether the assignment is absolute or intended only as a collateral security. (emphasis added)
Aside from these considerations, even if the bank only held a security interest, at the hearing on the plea in bar, International carried the burden of proving a levy by the Internal Revenue Service on a tax lien superior to the interest of the bank. For its tax lien to take precedence over any security interest of the bank, it was incumbent upon the Internal Revenue Service to file notice of a tax lien upon the public records of the county of the principal business office of Walden as required by Section 6323(a), (f)(1) and (2) of the Internal Revenue Code. See also, Mertens, Laws of Federal Income Taxation, Volume 9, Section 54.42, at 107, 112; Mississippi Code Annotated Section 89-5-47 (1972); S. D'Antoni, Inc. v. Great Atlantic & Pac. Tea Co., Inc., 496 F.2d 1378 (5th Cir.1974). International made no offer of proof of notice of the IRS tax lien being filed of public record at any time or any place.
While this case could be affirmed under the familiar appellate rule that a trial court will not be reversed unless manifestly wrong, the difficult questions raised by this case justify a more detailed inquiry into the relative positions of the parties on November 15, 1977, and obligations International had to the Internal Revenue Service and Peoples Bank.
It has long been held that a valid assignment of a debt or contract conveys the entire interest of the assignor to the assignee, and thereafter the assignor has no interest therein. In this State this has been held true, even when the debtor might not have notice of the assignment. See School-field v. Hirsh, 71 Miss. 55, 14 So. 528 (1893).
6A C.J.S. Assignments, Section 81, pp. 728-729, states:
As a general rule, an assignee under a valid assignment generally takes priority over subsequent creditors of the assignor who had no lien on the subject matter of the assignment at the time it was made, or over representatives of creditors, who stand in the assignor's shoes and take subject to all equities against him.
6 Am.Jur.2d Assignments, Section 114, p. 196, states:
Where a debtor has notice of the assignment of the entire debt and acts upon it, the rights of the parties are fixed, and that assignment is superior to subsequent assignments or liens.
Prior to the adoption by Mississippi of the Uniform Commercial Code, the general law made no distinction between an assignment given as collateral security for a debt, and an unrestricted assignment, at least to the extent of the debt due by the assignor to the assignee. 6A C.J.S. Assignments, Section 73, pp. 710-712, states:
As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor. It passes the whole right of the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment.

*862 The assignee is the owner whether the assignment is absolute or conditional, and, if the assignment is voidable at the option of the assignor, the assignee is the owner of the chose until such option is exercised.
Section 82 of this same authority, p. 730 states:
An assignment that is made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured. ... (emphasis added)
This same section further states, however, on page 732:
Before the debt secured is paid, the assignee is, to the extent of his interest, the owner of the collateral as against the assignor and creditors or others claiming under him ...
In Illinois Central Railroad Company v. Bryant and Shackleford, 70 Miss. 665, 12 So. 592 (1893), Cross, the railroad company employee, assigned $61 in wages to Bryant and Shackleford, who promptly gave notice to the depot agent in Water Valley. Two days following receipt of this notice, the railroad company answered a garnishment proceeding against it in Tennessee by creditors of Cross, admitting an indebtedness to Cross, and thereby having judgments rendered against it in Tennessee for the amount of the indebtedness due Cross, which the company paid. Bryant and Shackleford brought suit for the amount of the assigned wages, and the railroad's defense was payment of the judgments in Tennessee. This Court held the company liable to Bryant and Shackleford.
The opinion concludes:
Those judgments (in Tennessee) are unassailable, but they were the product of the inexcusable negligence of the railway company's officials in answering and acknowledging an indebtedness, in the Tennessee litigation, when, in fact, as the company knew, (if its officials had paid proper heed to the notice of Cross' assignment to appellees of the claim now sued on) it had no funds of Cross' in its hands, and was not indebted to him at all at the time of making its answer as garnishee.
Brown v. Yarbrough, 130 Miss. 715, 94 So. 887 (1923), held that an assignment of a deed of trust due by a debtor to the assignor as collateral security for an indebtedness due by the assignor to the assignee vested the assignee with full legal title to the deed of trust.
In Ewin Engineering Corp. v. Deposit Guaranty Bank and Trust Co., 216 Miss. 410, 62 So.2d 572 (1953), this Court stated:
Where a person knows of an assignment and either incurs additional obligations to the assignor or makes payment to him, or other persons, in preference thereto, he cannot escape liability to the assignee.
See also, Fuller Const. Co. v. Allen Dredging Co., 162 Miss. 797, 140 So. 231 (1932).
International argues on this appeal Peoples Bank was owed no money by International under the contract with Walden, because the assignment was only given by Walden to the Bank as a collateral security. The sole case it cites in support of this proposition is Inter-Southern Life Ins. Co. v. Humphrey, 122 Miss. 579, 84 So. 625, (1920). The facts in that case were different from this case, and the other Mississippi cases herein cited, however, and likewise the legal question to be decided was different. In that case two insurance agents became indebted to one Mrs. Humphrey, and to secure the note they assigned as collateral security inter alia all their "claims and demands against the insurance company on account of renewal commissions accrued and thereafter to accrue ... and all commissions accrued or accruing thereafter under or on account of said contract ..." were to be paid to Humphrey. The assignment further provided that in event of failure to pay the note Humphrey would have the right to sell the assigned claims and demands at public auction.
The insurance company's contract with the agents contained a provision prohibiting assignment of commissions unless authorized in writing by the company in advance.
Apparently, no notice was given the insurance company of this assignment prior *863 to default. Following default the executor of Humphrey's estate filed a bill for discovery against the insurance company and for an accounting of money due the insurance agents. A demurrer to the bill was sustained on the ground the assignment was invalid because of the contractual proscription against assignment. On appeal this Court held the only rights given Humphrey under the assignment were to collect the renewal commissions and hold them as collateral to secure payment of the note, and the assignee did not become the real and unconditional owner, both legal and equitable, of the renewal commissions due under the agency contract. This Court further held the insurance agents had not disposed of their entire interest in the commissions by the assignment, but merely pledged them as collateral security, and retained in themselves the legal ownership.
This Court went on to hold that this particular assignment did not violate the terms of the contract between the insurance company and the agency, and was therefore enforceable.
In Merchants & Farmers Bank of Meridian v. McClendon, 220 So.2d 815 (Miss. 1969) we suggested some of the language in Humphrey to have been overly broad and dicta. In McClendon we held an assignment given as collateral security also constituted an absolute assignment and violated the contractual provisions of the contract between the assignor subcontractor and prime contractor, and was invalid.
Likewise, in the instant case, even though initially given as collateral security for the note, the assignment was complete, only one contract was assigned, with notice to the debtor, who accepted its terms.
We do not believe it was the intention of the Court in Humphrey to hold the rights of an assignee under an assignment given as collateral security cannot be as firm and fixed as a complete or total assignment, at least to the extent of the debt due. As has been expressed in Alabama and Florida decisions:
When collateral is duly assigned as security for a debt, the assignee creditor acquires the title to the security which the assignor debtor cannot abridge. The latter merely enjoys an equity of redemption.
See Darling Shop of Birmingham v. Nelson Realty Company, 262 Ala. 495, 79 So.2d 793 (1954), and Travelers Ins. Co. v. Tallahassee Bank and Trust Co., 133 So.2d 463 (Fla. 1961).
This brings us to a consideration of the rights of the Internal Revenue Service under its levy. Section 6321 of the Internal Revenue Code provides the taxpayer's failure to pay any tax when due will result in a lien upon all property and rights belonging to the taxpayer.[3]
It must first be borne in mind that when the Internal Revenue Service made its levy upon International it had no more right to any proceeds under the contract than the taxpayer Walden had. See Mertens, Law of Federal Income Taxation, Volume 9, Section 54.52, p. 172, note 31, and cases cited thereunder.
Two United States District Court cases in this State have held as a matter of law that assignees of building contract proceeds took precedence over a tax lien levied against the subcontractor assignor. In Hall v. United States, 258 F. Supp. 173 (S.D.Miss. 1966), a paint supplier which had been assigned the proceeds of the paint subcontractor had superior rights to the IRS claiming under a tax lien, the Court stating:
It is unthinkable to this Court that this fund in this case under these facts could be said to belong in whole or in part to Martin (the subcontractor) and, therefore, be subject to his tax debt.
258 F. Supp. at 174.
Likewise in Monroe Banking & Trust Company v. Allen and United States, 286 *864 F. Supp. 201 (N.D.Miss. 1968) the lending bank which had been assigned as collateral security the proceeds of a painting and caulking subcontractor had superior rights to the proceeds over the IRS claiming under a tax lien. In this case the Court stated, "The position of the government is without any appeal... ." 286 F. Supp. at 212. Further, "There being no property or rights to property remaining in Allen (the subcontractor) subsequent to the dates of the respective assignments, the government's claim must fail." Id. at 213.
It is thus clear that even if this were a collateral assignment, the assignment by Walden would have effectively conveyed Walden's entire interest in the contract prior to the adoption of the Uniform Commercial Code on March 31, 1968, in this state, at the very least to the full extent of the indebtedness due the bank, and Walden would have had no interest in the contract when the levy was made upon International.
As we have noted, this Court is faced with a sparse as well as ambiguous record on whether this was a collateral or unconditional assignment, from which the trial judge could have found either way. Since the original note and security agreement given by Walden to Peoples Bank initially evidences an assignment given as collateral security, however, for purposes of this portion of the opinion we will assume it was.
There is no question but a security interest was acquired by Peoples Bank in the Walden-International contract, and proceeds due Walden thereunder. A security agreement creating a security interest was signed by Walden as required by Mississippi Code Annotated Section 75-9-105(h) (1972): "(h) `Security agreement' means an agreement which creates or provides for a security interest."
The security interest created thereby likewise attached under the provisions of Mississippi Code Annotated Section 75-9-204 (1972): "(1) A security interest cannot attach until there is agreement ... that it attach and value is given and the debtor has rights in the collateral."
There only remains the question whether the security interest was perfected so as to protect the bank against subsequent lienholders or holders of security interests. Ordinarily, to perfect a security interest it is necessary for a filing statement to be filed of public record as required by Mississippi Code Annotated Sections 75-9-302, 75-9-401, 75-9-402 and 75-9-403 (1972).
This record does not inform the Court whether any financing statement was filed in connection with this loan, or the previous loan to Walden of $67,000 which could cover this loan as well.
International is in a very weak position to complain, however, because on the hearing of the plea in bar it failed to prove a levy superior to Peoples Bank, because as here-before noted there was no proof of any notice of lien being filed of public record prior to making the levy on International. Section 6321 of the Internal Revenue Code provides for a tax lien in favor of the government as stated above. Yet Section 6323 of the Internal Revenue Code, together with Mississippi Code Annotated Section 89-5-47 (1972) (dealing with places federal tax liens may be filed) required some public notice of this lien to be filed at the principal place of business of the taxpayer for the levy to be valid as against the bank.[4] If no *865 notice of lien was filed of public record, then the government, insofar as the bank was concerned, was no more than an unsecured creditor. See S. D'Antoni, Inc. v. Great Atlantic & Pac. Tea Co., Inc., 496 F.2d 1378 (5th Cir.1974). Insofar as this record is concerned, this is not a case of priority of filing, but no filing whatever of any notice.
Moreover, we have concluded in this case no filing statement was required to perfect the bank's security interest in the contract. When the contract was assigned and delivered to the bank, and notice given to and accepted by International, this contract between Walden and International was an instrument within the definition of the code, and possession by the bank perfected the security interest of the bank.
Was this contract  delivered, assigned, and accepted by the debtor  an instrument within the definition of the code?
We quote the pertinent parts of Mississippi Code Annotated Section 75-9-105(g) (1972):
(g) "Instrument" means ... any ... writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary ... assignment.
The contract certainly was written. When executed, delivered and assigned to the bank, and its assignment accepted by International, it evidenced a right to the payment of money. It was no security agreement or lease. Finally, it most assuredly was of a type which in the ordinary course of business could be transferred by delivery with any necessary assignment.
We hold under the facts of this case this particular contract constituted an "instrument" within the meaning of the Code, and was such at the time the levy was made upon International November 15, 1977.
Mississippi Code Annotated Section 75-9-305 (1972) provides: "A security interest in letters of credit and advices of credit, goods, instruments ... may be perfected by the secured party's taking possession of the collateral." (emphasis supplied).
The bank therefore held a perfected security interest in this contract. The debt due by International under its contract with Walden on November 15, 1977, was the property, not of Walden, but of Peoples Bank, regardless of whether this assignment is covered by the provisions of the Uniform Commercial Code or not.
Insofar as the position of the Internal Revenue Service was concerned this Court is inclined to agree with the expressions of the United States District Court in Hali v. United States, supra, that it was the bank's money, after all, which gave rise to the fund, and it is unthinkable it should belong to the government; and in Monroe Banking & Trust Company v. Allen, supra, which stated that without bank financing, there would have been nothing of value in this contract, and "... the position of the government is without any appeal ..." p. 212.
*866 This leaves the final question: did payment to the Internal Revenue Service by International, pursuant to the levy made upon it, discharge International from any liability to Peoples Bank based upon its contract with Walden?
International ably argues on this point, first, it was in the position of those valiant members of the famous light brigade.[5]
As to this first proposition, International cites Section 6331 of the Internal Revenue Code which provides for the levy to be made upon any assets of the taxpayer.[6]
Also, Section 6332(a) sets forth the duty of a person in possession of assets of the delinquent taxpayer to surrender them to the Internal Revenue Service.[7]
This same Section 6332(c)(1) and (2) provides for enforcement of the levy, and a penalty for violation of the levy by the person holding assets of the taxpayer.[8]
In addition to arguing it had no choice but to honor the levy, International then argues that in honoring the levy, under Section 6332(d) it was discharged from any obligation under this debt, not only to Walden but to International as well.[9]
We disagree with International's first argument it had no choice but to honor the levy. As to the second argument, that payment discharged its entire obligation under the contract. Section 6332(d) specifically provides that any possessor of a taxpayer's property surrendering the assets to the Internal Revenue Service shall only be discharged from any obligation or liability to the taxpayer. It expresses no statutory intent to discharge the holder of assets from liability to a third party who has been damaged by wrongful payment.
*867 The first obligation International had when the levy was made upon it was to determine whether or not it had any property or rights, or any indebtedness due Walden. It not only was under no duty; indeed, it had no business whatever delivering third parties' property to the government in response to the levy, because the government could rise no higher than the taxpayer.
Insofar as International had been informed, there had been a complete, unconditional assignment to Peoples Bank, which it had accepted. There is nothing in the letter from the bank to International of July 19, 1977, indicating other than a complete assignment. In such a posture, International could truthfully have responded to the government's levy it had no property of Walden's, and attached its copies of the contract, documents and the letter from the bank notifying International of the assignment.
It is inconceivable to this Court International could ever have labored under the misapprehension, especially in view of the advice of its own legal department, Peoples Bank did not own this indebtedness at the time of the November 15, 1977, levy. Even as a security device, and as a collateral assignment, basic research by International would have divulged this to have been a wrongful levy. It manifestly failed to read either the general or Mississippi authorities or Internal Revenue Service Regulations pertaining to definitions of a wrongful levy. Section 307.7426.1(b)(1) 1973-1974 Regulations contains the following significant paragraph:
For purposes of this paragraph, a levy is wrongful against a person (other than the taxpayer against whom the assessment giving rise to the levy is made) if ... (b) the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter, or ... (d) the levy or sale pursuant to levy will or does effectively destroy or otherwise irreparably injure such person's interest in the property which is senior to the Federal tax lien.[10]
If International had any question whatever about the ownership of Peoples Bank in the indebtedness due under this contract, it had several courses of action. It received the notice on November 15, 1977. It paid the levy to the Internal Revenue Service on October 23, 1978.
First, it could have notified the Internal Revenue Service of the assignment to Walden, and also notified the bank of the levy, and sought some amicable resolution of the matter. It had ample time to make inquiry and ascertain the respective positions of the parties, waiting almost a year from the time of the levy until payment.
If it received no satisfaction from the Internal Revenue Service or Peoples Bank, then International could have interpleaded the funds as was done by Hall in the case of Hall v. United States, supra. Further, as enumerated in the case of United States v. Trans-World Bank, 382 F. Supp. 1100, 1105 (D.C.Cal. 1974), International could have interpleaded *868 the funds in a United States District Court pursuant to Section 2410, Title 28, United States Code, or sought relief under Section 1346 of Title 28, United States Code.
As to its having no choice but make the payment, the position of International is without appeal to this Court. Insofar as this record shows, it did nothing after receipt of the levy which would have been of benefit to any of the parties except International. It did not inform Peoples Bank of the levy, which would have given the bank an opportunity to protect itself. It did not inform Internal Revenue Service, which, had it been informed, might very well have taken a different position as to the funds, for all this Court knows. We must accord to representatives of the Internal Revenue Service some sense of fair play, morality, and sense of justice. If in fact International made no mention to either Internal Revenue Service of the previous assignment, or to Peoples Bank of the levy, then it did an injustice to them both.[11]
This record shows International thinking only of itself, taking full advantage of contractual rights to delay payment to the last possible day (and still some margin in its favor), waiting almost a year from the levy before making payment. It obviously recognized the levy did not enlarge any rights in the government to demand payment from it under the contract at an earlier date.
The authorities above cited, Illinois Central Railroad Company v. Bryant and Shackleford, 70 Miss. 665, 12 So. 592 (1893); Ewin Engineering Corp. v. Deposit Guaranty Bank and Trust Co., 216 Miss. 410, 62 So.2d 572 (1973); and Fuller Const. Co. v. Allen Dredging Co., 162 Miss. 797, 140 So. 231 (1932), agree that a debtor after notice of an assignment of the debt, and acceptance thereof by him, who pays the assignor or some third party other than the assignee, is liable to the assignee for the amount of the debt assigned. Elements of a tort may also be activated in conduct of this kind. See 86 C.J.S. Torts, Section 2-3; 74 Am.Jur.2d Torts, Section 23, 24.
There is nothing in the cases cited by International to suggest wrongful payment to the government under an Internal Revenue Service levy should create an exception to the rule, and we therefore hold the lower court was correct in rendering judgment in favor of Peoples Bank for the amount of the assigned debt.
One final point bears mention. International suggests to us that if in fact there was a wrongful levy, then Peoples Bank has a right of action to recover the funds from the government under the provisions of Section 7426(a) of the Internal Revenue Code. This code section provides a remedy against the government for a wrongful levy such as was made in this case.[12]
Regrettably, International neglected to inform either this Court or Peoples Bank. This is a rather stale opportunity in view of Section 6532 of the Internal Revenue Code which indicates such suit by Peoples Bank would be limited to a filing date not exceeding nine months following the levy. See Dieckmann v. United States, 550 F.2d 622 (10th Cir.1977).
As far as this record shows, Peoples Bank was already barred by Section 6532 by the *869 time International paid the money to the Internal Revenue Service, and constitutes another reason for this Court's disapproval of International's conduct.
Perhaps International may wish to recover the funds it paid under a wrongful levy by the government. Nothing about this opinion shall be construed in prejudice of any right International has for the recovery of the money it paid the government.
The judgment of the circuit court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.
NOTES
[1] In oral argument counsel did not know whether any of this relevant information was given to either the Internal Revenue Service or to Peoples Bank.
[2] There is nothing in the declaration of Peoples Bank indicating that even when it filed suit it was aware International had paid the money under the contract to the Internal Revenue Service.
[3] The provisions of Section 6321 are as follows:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.
[4] Section 6323. Validity and priority against certain persons

(a) Purchases, holders of security interests, mechanic's lienors, and judgment lien creditors.  The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate. (emphasis added)
* * * * * *
(f) Place for filing notice; form. 
(1) Place for filing.  The notice referred to in subsection (a) shall be filed 
(A) Under State laws. 
* * * * * *
(ii) Personal property.  In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; or
(B) With clerk of district court.  In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State has not by law designated one office which meets the requirements of subparagraph (A); or
* * * * * *
(2) Situs of property subject to lien.  For purposes of paragraphs (1) and (4), property shall be deemed to be situated 
* * * * * *
(B) Personal property.  In the case of personal property, whether tangible or intangible, at the residence of the taxpayer at the time the notice of lien is filed.
For purposes of paragraph (2)(B), the residence of a corporation or partnership shall be deemed to be the place at which the principal executive office of the business is located, and the residence of a taxpayer whose residence is without the United States shall be deemed to be in the District of Columbia.
[5] "Theirs not to make reply

Theirs not to reason why."
Tennyson, "The Charge of the Light Brigade."
[6] The pertinent provisions of Section 6331 are as follows:

(a) Authority of Secretary or delegate.  If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.
[7] (a) Requirement.  Except as otherwise provided in subsection (b), any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.
[8] (c) Enforcement of levy. 

(1) Extent of personal liability.  Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at an annual rate established under Section 6621 from the date of such levy (or, in the case of a levy described in Section 6331(d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.
(2) Penalty for violation.  In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.
[9] (d) Effect of honoring levy.  Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary or his delegate, surrenders such property or rights to property (or discharge such obligation) to the Secretary or his delegate (or who pays a liability under section (c)(l) shall be discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment... .
[10] (2) Example. The provisions of subparagraph (1) of this paragraph may be illustrated by the following example:

Example. On April 10, 1972, A makes a $10,000 loan to B which is partially secured by a $5,000 obligation owed to B by C. Under local law, A's security interest in the obligation owed to B by C is protected against a subsequent judgment lien arising out of an unsecured obligation. Thus, under section 6323(h)(1), A's security interest exists as of April 10, 1972, for purposes of determining priorities against a tax lien under section 6323. On April 17, 1972, an assessment of $6,000 is made against B with respect to his delinquent Federal tax liability. Thereafter, notice of lien is filed pursuant to section 6323(f) with respect to B's delinquent tax liability. On July 10, 1972, a notice of levy is served upon C to reach the amount owed by him to B. C pays over the $5,000 obligation in satisfaction of the levy and, under local law, the obligation is discharged as to A. Because the levy effectively destroyed A's senior security interest in the obligation owed to B by C, the levy is wrongful as to A for purposes of section 7426. Under these circumstances, the levy is wrongful with respect to A even if, under local law, A may have a cause of action in contract against B for the $10,000 loan or may have a cause of action in tort against C for the amount of the $5,000 payment which defeated A's security interest in the obligation owed by C to B.
[11] Of course, there is a possibility the Internal Revenue Service knew of the assignment prior to its levy, and in such event this knowledge might have subordinated its tax lien to the assignment even as unperfected collateral security under the Uniform Commercial Code. Mississippi Code Annotated Section 75-9-301 (1972). In view of our holding, however, we need not pursue this.
[12] The provisions of Section 7426(a) are as follows:

(a) Actions permitted. 
(1) Wrongful levy.  If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.