ON PETITION FOR REHEARING
En Banc.
DAN M. LEE, Presiding Justice,
for the Court:
The Petition for Rehearing in this cause is granted. The previous opinion is withdrawn and the following opinion substituted in its place.
I.
Today we are called upon to assess, under our limited standard of review, the correctness of the Chancellor’s determination on a question of law, that an instrument executed by a debtor was an equitable mortgage which was barred by the statute of limitations. We hold that the Chancellor’s finding was incorrect, and accordingly, reverse.
II.
During 1969, Norman B. Gillis, Jr. [Gillis] sued Nelson Case [Case] for non-payment of three (3) distinct and separate debts. The parties entered into negotiations while suit was pending and eventually reached an agreement: in exchange for an assignment of Case’s interest in the Alcorn Pipeline Company, Gillis would dismiss his lawsuit without prejudice. At the time this agreement was reached Case was apparently *693 unable to pay the debts in full and the Alcorn Pipeline Company was in receivership in Jefferson County, Mississippi; however, both parties believed the Alcorn Pipeline Company had substantial value and at some time in the future had good prospects. On July 18, 1969, the parties executed the following instrument regarding Case’s interest in the Alcorn Pipeline Company in accordance with their agreement as the method by which Case would pay Gillis what he was justly owed:
ASSIGNMENT
Whereas, Nelson Case is indebted to Norman B. Gillis, Jr. in the following amounts:
(a) Fifty percent of the sum of $4,454 [$2,227.00] together with interest from the date of this assignment at 6% per annum until paid (representing unpaid pro rata costs on certain Jasper County leases).
(b) Fifty percent of the sum of $15,-980.35 [$7,990.17] together with interest at 8% per annum from April 18, 1969, until paid (representing half of an unpaid note balance due Deposit Guaranty National Bank incurred in the purchase of overriding royalty and other rights under the Blammett Farms, Inc. lease in Claiborne County).
(c) Fifty percent of the sum of $3,000 [$1,500.00] together with interest at. 6% per annum from December 12, 1969 until paid (representing a portion of the consideration due for the transfer of the same Hammett Farms, Inc. overriding royalty and other rights).
And the undersigned, desiring to secure said indebtedness does hereby assign unto Norman B. Gillis, Jr. one half of 75% [35%] of the net income attributable to the interest of the undersigned in the partnership known as Alcorn Pipeline Company or one-half of the net income therefrom after income taxes, whichever is greater, until the above described indebtedness, plus interest, is fully paid.
Provided however that this assignment is made subject to and without prejudice to the adjudication [sic] of pending claims of creditors in proceedings now pending in the Chancery Court of Jefferson County, Mississippi, and is therefore effective as of the date on which the undersigned is again placed in possession of his interest in said partnership and the income therefrom.
This 18th day of July, 1969.
/S/ Nelson Case.
In September 1986, following the execution of the foregoing instrument and in reliance upon the agreement, Gillis dismissed his lawsuit against Case without prejudice.
Seventeen (17) years after the execution of the foregoing document the receivership of Alcorn Pipeline was nearing a close. On October 17, 1986, Gillis filed a motion to intervene in the receivership of Alcorn Pipeline Company, asking that payment of the amount due him in accordance with the foregoing instrument, $27,545.67, be paid directly to him or, in the alternative, that the foregoing instrument be declared a lien on Case’s interest in the company until the debts secured by the instrument had been paid in full.
Alcorn Pipeline’s receivership was terminated December 10, 1986. Included in the termination Order was a provision for handling the $30,000.00 distribution due the interest held by Case and claimed by Gillis: the chancery clerk was to establish a money market account into which these funds would be deposited and held until further resolution by the court. On December 24, 1986, Gillis moved for distribution of the escrow funds. Gillis charged that of the $30,000.00 being held by the chancery clerk, he was entitled to $27,545.67, plus interest from December 10, 1986.
Following a January 9, 1987, trial, the Chancellor found that the instrument in question constituted an equitable mortgage because it was executed to secure the three debts of Case, not to renew or extend the debts. The Chancellor further found Gillis’ claim, asserted seventeen (17) years after the execution of the document, barred by the Statute of Limitations, Miss.Code Ann. § 15-1-21 (1972), determining that each of the three debts became barred as of May 27, 1970, April 18, 1975, and December 12, *694 1975, respectively. Based on these findings, the Chancellor dismissed with prejudice Gillis’ motion for distribution.
III.
The issue which mandates reversal of this case is whether the July 16, 1969, instrument, supra, was an assignment or an equitable mortgage. The Chancellor below determined that the instrument executed by Case was an equitable mortgage and as such, Gillis’ claim was barred by § 15-1-21. “A mortgage is not an assignment and differs from an assignment in that it creates a lien in favor of the mortgagee, whereas an assignment passes the whole interest in the thing assigned.” 6A C.J.S. Assignment, at p. 596.
The controlling law on this issue is found in International Harvester v. Peoples Bank & Trust, 402 So.2d 856 (Miss.1981):
It has long been held that a valid assignment of a debt or contract conveys the entire interest of the assignor to the assignee, and thereafter the assignor has no interest therein. In this State this has been held true, even when the debtor might not have notice of the assignment, [citation omitted]
* * * * * *
6A C.J.S. Assignments, Section 73, pp. 710-712, states:
As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor. It passes the whole right of the assign- or, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment.
The assignee is the owner whether the assignment is absolute or conditional, and, if the assignment is voidable at the option of the assignor, the assignee is the owner of the chose until such option is exercised.
⅛ * * * sfc sfc
[T]he rights of an assignee under an assignment given as collateral security cannot be as firm and fixed as a complete or total assignment, at least to the extent of the debt due. As has been expressed in Alabama and Florida decisions:
When collateral is duly assigned as security for a debt, the assignee creditor acquires the title to the security which the assignor debtor cannot abridge. The.latter merely enjoys an equity of redemption.
Id. at 861-63.
After several careful and thorough examinations of the record in this case in light of the relevant law and our familiar standard of review regarding the findings of Chancellors sitting without a jury, Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989), we find that the Chancellor erred as a matter of law in holding Gillis’ claim was based upon an equitable mortgage and barred by the statute of limitations (when, in fact, there was no note secured by the mortgage which could be barred by the statute of limitations). Gillis’ claim was, in fact, an assignment as heretofore defined.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, and BLASS, JJ., concur.
ANDERSON and PITTMAN, JJ., not participating.